**TEXAS DEPARTMENT OF
TRANSPORTATION,**
Appellant,

v.

**Amy Y. OLSON, As Next Friend
of Lindsey Powell, a Minor,**
Appellee.

No. 2–97–316–CV.

Court of Appeals of Texas,
Fort Worth.

Oct. 22, 1998.

The Law Offices of Jeffrey H. Kobs, Jeffrey H. Kobs, The Haslem Firm, Bob Haslam, Haney & Ticknor, Mark Haney, Fort Worth, for Appellee.

Before DAY, DAUPHINOT and BRIGHAM, JJ.

## OPINION

DAUPHINOT, Justice.

## INTRODUCTION

Appellant Texas Department of Transportation ("TxDOT") appeals a jury verdict in favor of Appellee Amy Olson in a suit arising out of an automobile accident. In three points on appeal, TxDOT argues that there is no evidence to support the jury's finding that TxDOT's negligence was the proximate cause of the accident, that Morrison's testimony as to his habit was improperly excluded, and that certain testimony of Olson's expert was improperly admitted. Because we hold that there is evidence to support the jury's finding that TxDOT's negligence was a proximate cause of the accident, that TxDOT failed to preserve the question of Morrison's testimony for our review, and that TxDOT both failed to preserve and waived any error as to the admission of the testimony of Olson's expert, we affirm the judgment of the trial court.

## FACTUAL BACKGROUND

On a clear June evening while there was still daylight, Rick Powell was traveling westbound on State Highway 80, just west of Fort Worth, when his motorcycle collided with a car driven by Arthur Morrison. Morrison was driving southbound on Alemeda Street near its intersection with Highway 80. As a result of the collision, Powell was killed and Morrison suffered a concussion that left him with no memory of the wreck. Olson, individually and as next friend of Powell's minor child Lindsey Powell, sued TxDOT. She alleged that TxDOT was negligent in (1) failing to properly maintain the highway, thus permitting an obstruction to block Morrison's view; (2) failing to warn drivers of the condition of the stop sign located too far back from the road; (3) failing to place the stop

Dan Morales, Attorney General of Texas, Jorge Vega, First Asst. Atty. General, Laquita A. Hamilton, Dep. Atty. General, Grady Click, Alan Grundy, Assistant Attorneys General, Austin, for Appellant.

sign in a proper and reasonable location; and (4) failing to remedy the location of the stop sign within a reasonable time after notice. Olson alleged that TxDOT's negligence was a proximate cause of the wreck, but not the sole proximate cause.

At trial, the court charged the jury as follows:

> With respect to the condition of the stop sign, the Texas Department of Transportation was negligent if it failed to exercise ordinary care and the condition of the stop sign was not corrected by the Texas Department of Transportation within a reasonable time after notice.

> With respect to the vegetation on the right of way of Highway 80 and Alemeda, the Texas Department of Transportation was negligent if:

> a. such condition posed an unreasonable risk of harm to a motor vehicle operator exercising ordinary case [sic];

> b. the Texas Department of Transportation had actual knowledge of the condition of the roadway that posed an unreasonable risk of harm;

> c. that Ricky Powell did not have actual knowledge of the condition of the roadway that posed an unreasonable risk of harm; and

> d. the Texas Department of Transportation failed to both adequately warn Ricky Powell and Arthur Morrison of the dangerous condition and failed to make that condition reasonably safe.

The jury found both TxDOT and Morrison negligent and assigned responsibility of thirty-one percent and sixty-nine percent respectively.

## PROXIMATE CAUSE

In its first point on appeal, TxDOT argues that the trial court erred in overruling its motion for directed verdict, its objection to the submission of the charge, and its motion for new trial because no evidence supports the jury's answer that TxDOT's negligence was the proximate cause of the accident.

### (A) STANDARD OF REVIEW

▮ In determining a "no-evidence" point, we are to consider all of the evidence in the light most favorable to the party in whose favor the verdict has been rendered, and to indulge every reasonable inference from the evidence in that party's favor.[1] If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence.[2]

▮ A "no-evidence" point may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact.[3] There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact.[4]

### (B) APPLICABLE LAW

▮ TxDOT does not challenge the jury's determination that it owed a duty or that it breached that duty, but challenges only the jury's finding that its negligence was a proximate cause of the accident. The elements of proximate cause are cause in fact and fore-

1. See Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 48 (Tex.1998); Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.1997), cert. denied, — U.S. —, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

2. See Formosa Plastics Corp., 960 S.W.2d at 48; Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex. 1996).

3. See Merrell Dow Pharms., 953 S.W.2d at 711 (citing Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 TEX. L. REV. 361, 362–63 (1960)).

4. See Orozco v. Sander, 824 S.W.2d 555, 556 (Tex.1992).

seeability.[5] Since TxDOT does not contest foreseeability, the only issue for our consideration is whether there is any evidence from which reasonable minds could draw an inference that TxDOT's negligence was a cause in fact of the accident.[6]

■■■ "Cause in fact means that an act or omission was a substantial factor in bringing about the injury and without which no harm would have occurred."[7] Causation does not have to be supported by direct evidence, as circumstantial evidence and inferences therefrom are sufficient as a basis for finding causation.[8] Furthermore, there can be more than one proximate cause of an event.[9] "The question of proximate cause is one of fact particularly within the province of a jury, and a jury finding on proximate cause will be set aside only in the most exceptional circumstances."[10]

### (C) APPLICATION OF LAW TO FACTS

The trial court charged the jury on proximate cause as follows:

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using *ordinary care* would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

We conclude that trial court correctly charged the jury on proximate cause.

■■■ TxDOT contends that proof of where Morrison stopped on Alemeda Street, if he did stop, is a vital fact needed to establish that TxDOT's negligence was a cause in fact of the accident. TxDOT further argues that there is no evidence to prove this vital fact

because Powell is dead, Morrison has no memory of the accident, and there are no eyewitnesses who saw Morrison stop. In effect, TxDOT argues that proximate cause may be proved as a matter of law only when an eyewitness offers direct evidence of all actions leading to the result of the tort. The Texas Supreme Court has held directly against TxDOT's position, declaring that causation does not have to be supported by direct evidence, "as circumstantial evidence and inferences therefrom are a sufficient basis for a finding of causation."[11] We hold that there is more than a scintilla of evidence to support the jury's finding that TxDOT's negligence was a proximate cause of the accident. A summary of the evidence supporting the jury's finding follows.

### (1) THE CONDITION OF THE STOP SIGN

TxDOT's policies require that all traffic signs be kept in proper position. The stop sign on Alemeda was supposed to be placed, if possible, between zero and fifty feet from the intersection. Mr. Vernon, the Assistant City Attorney for the City of Fort Worth, testified that the sign was under the control of TxDOT and that the sign was located fifty to fifty-five feet from the intersection. The uncontroverted evidence shows that the stop sign was approximately fifty-four feet from the intersection. There was no "stop line" or crosswalk marked on Alemeda that would indicate where a motorist should stop. Nothing other than the stop sign indicated where a driver was to stop before entering the intersection.

TxDOT policies require complete records of all sign installations, scheduled inspections by trained personnel, and continual observations of sign conditions by all TxDOT employees. Ralph Apodaca is a TxDOT mainte-

---

5. See *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995).

6. See *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 459 (Tex.1992).

7. *Id.* at 458–59.

8. See *id.* at 459.

9. See *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991).

10. *Potter v. Anthony Crane Rental of Tex., Inc.*, 896 S.W.2d 845, 850 (Tex.App.—Beaumont 1995, writ denied) (citing *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 756 (Tex.1975)).

11. *Havner*, 825 S.W.2d at 459.

nance supervisor responsible for the area in which the Alemeda and Highway 80 intersection is located. He testified that although TxDOT policies require signs to be inspected four times a year, there was no record indicating that the stop sign on Alemeda had ever been inspected. Apodaca also testified that the stop sign was "too far back" and that, had he known the sign was so far from the intersection, he would have ordered it moved.

Apodaca testified as follows:

Q. If your men would have reported that this sign was back there, the view was obstructed, you would have gone out there as soon as you could and would have had or taken steps to have that sign moved up to this point?

A. Yes, sir....

Q. All right. And when they failed to tell you about the condition of that sign in their inspections, they're not allowing you to do your job and get that sign moved, are they?

A. Correct.

Q. Because the most important thing about a stop sign here is to give those people that sight distance they need to safely operate their vehicle with other vehicles; isn't that right?

A. Yes, sir....

Q. Well, if you would have looked at this sign you would have actually inspected it—I don't mean driving by on the roadway at 50 miles an hour to your destination. I mean stopping and getting out and doing the inspection that's required by law, you would have had that signed [sic] moved, wouldn't you?

A. Yes, sir.

Q. No doubt about that?

A. Yes, sir.

Q. And so since you never had that sign moved, it's fair to assume you never even inspected that sign?

A. I never inspected that one, sir.

Q. It's difficult to ask your men to do things that you don't do yourself, isn't it?

A. Well, it's just, you know, hard to—hard to cover everything out there. You try to look at everything as you drive by.

Q. But that's still no excuse, is it, to miss this sign?

A. You miss some things sometimes.

Q. And when you miss them, you don't do your job and your men don't do your job, people get killed, don't they?

A. Yes.

Roy Anderson has a background in traffic engineering and testified as an expert witness for Olson. When Anderson attempted to present to the jury his conclusions on negligence and proximate cause, TxDOT objected. The trial court sustained objections to the proximate cause testimony, but allowed testimony concerning negligence. Anderson concluded that the stop sign was negligently placed. He based his opinion on the fact that the Texas Manual of Uniform Traffic Control Devices provides that a stop sign should be placed as close as possible to the point at which you want the driver to stop. In his opinion, the intersection was dangerous because, with the stop sign located so far back from the intersection, people would likely ignore the stop sign or stop at a position without adequate sight distance. Anderson further testified that if a proper sign is used but is placed in the wrong location, the sign would lack credibility and drivers will ignore it. He testified that this stop sign located fifty-four feet back is not a credible stop sign.

Lee Jackson, a Fort Worth police officer who investigated the wreck, testified that he believed Morrison failed to yield the right-of-way to Powell. He testified that Powell was traveling in the center lane of the three westbound lanes of the divided highway. Neither he nor Anderson could determine with certainty the speed at which either driver was traveling. Jackson did testify that Powell's motorcycle struck Morrison's car from a point just behind the front left wheel to a point just in front of the rear left wheel. The wreck occurred thirty feet from the curb line at which Morrison entered Highway 80. But Morrison's car continued to travel ninety-eight feet across and beyond the intersec-

tion after the collision with Powell's motorcycle. The fact that Morrison's car traveled only thirty feet into the intersection before the point of collision, but ninety-eight feet after the collision, was evidence from which the jury could infer that Morrison was traveling too fast to have stopped at the intersection and that if he stopped, he must have stopped back closer to the sign where his view would have been obstructed. Jackson also discovered skid marks made by Powell's motorcycle, which were approximately sixty-four feet, seven inches in a straight line ending at the point of impact.

## (2) THE CONDITION OF THE SHRUBBERY AND GRASS

TxDOT fails to recognize that evidence of its negligence in permitting shrubbery, bushes, and high grass to obscure drivers' views at the Highway 80 and Alemeda intersection constitutes an independent ground on which the jury could find proximate cause. TxDOT concedes in its brief that the view of a driver who is stopped at the stop sign would be partially obscured by shrubbery growing on the outer limits of the highway right-of-way. But TxDOT argues that this shrubbery is only a factor if it is proven that Morrison stopped at the stop sign. We, however, conclude that there was sufficient evidence for the jury to determine that the shrubbery was a proximate cause of the accident regardless of where or if Morrison stopped.

Vernon testified that when stopped at the stop sign, a driver would not be able to see very far because of shrubbery that "obscured a lot of vision." Vernon further testified that the shrubbery is located on the line of the State's right-of-way and that the State is responsible for maintaining its right-of-way up to and including Highway 80.

Apodaca agreed with Vernon that if a car stopped at the stop sign, the driver's view to the east would be obstructed by the bushes. More importantly, Apodaca testified that the bushes extended fourteen feet past the location of the stop sign. Therefore, a driver who stopped past the stop sign would still have an obstructed view due to the shrub-

bery. He admitted that his crew had the authority to trim the portion of the bushes on State property and the authority to order the owner of the adjoining property to cut the bushes back. But Apodaca testified that he was not aware of the shrubbery ever being cut back or cut down in the past nine years or that the adjoining property owner had ever been notified to cut back the shrubbery. Nor was there any record dated prior to the accident indicating that the high grass had ever been mowed.

Anderson testified that the view of a person stopped at the stop sign would be obscured by the bushes. Anderson further testified that a motorist who is about to enter a road that has a fifty-mile-per-hour speed limit, such as Highway 80, should be able to see 551 feet down the road before entering the intersection. However, the sight distance from the stop sign on Alemeda to the east down Highway 80 is only 142 feet. The view from Alemeda to the east down Highway 80 is unobstructed by only at the curb line. Additionally, Anderson noted that stopping at the stop sign, rather than at the intersection, increases the amount of time during which a vehicle will be accelerating to cross the intersection, thus increasing the force of a collision.

### (3) ADDITIONAL EVIDENCE

Although most of the evidence focuses on the perspective of a driver on Alemeda, it is important to note that the misplaced sign and the shrubbery and tall grass affected Powell's view and his ability to try to avoid a collision. The misplacement of the sign and the vegetation obscuring the view from Highway 80 toward Alemeda would have deprived Powell of the ability to appreciate the danger of an on-coming vehicle that was accelerating from a stop back at the stop sign, or a vehicle that had no intention of stopping. The jury could infer from the straight skid marks made by Powell's motorcycle that Powell could not see Morrison in time to try to swerve to avoid a collision.

The jury also had the benefit of photographs taken soon after the wreck. The photographs show that the edge of the right-of-way along Highway 80 was higher than

the roadway and covered with tall grass and that the bushes are taller than the top of an ordinary passenger car. The line of sight from Highway 80 toward the Alemeda intersection is obscured, and a driver on Highway 80 does not have a view of either the stop sign or a vehicle on Alemeda until a driver is almost even with the intersection. Furthermore, the jury had evidence of prior wrecks at this same intersection.

### (D) CONCLUSION

The Texas Supreme Court admonishes intermediate appellate courts that we are not "called on to summarily disregard evidence or to substitute [our] judgment for the jury's." [12] The record reflects more than a scintilla of evidence from which the jury could infer that with respect to the stop sign TxDOT failed to exercise ordinary care and that the condition of the stop sign was not corrected within a reasonable time after notice. The record also reflects more than a scintilla of evidence from which the jury could infer that the vegetation posed an unreasonable risk of harm to a motor vehicle operator exercising ordinary care, that TxDOT had actual knowledge of the condition of the roadway, that Ricky Powell did not have actual knowledge of the condition of the roadway, and that TxDOT failed to adequately warn Ricky Powell and Arthur Morrison of the dangerous condition and failed to make that condition reasonably safe. And there is more than a scintilla of evidence to support the jury's finding that either of these negligent acts was a proximate cause of the collision between the vehicles of Powell and Morrison.

Based on the witness testimony, the photographs, and the evidence from the accident site, we cannot conclude that there was no evidence to support the jury's determination. [13] There is evidence from which reasonable minds could draw an inference that TxDOT's negligence was a cause in fact of the accident, and the jury's finding on proximate cause should not be set aside. Viewing all the evidence in the light most favorable to the jury's verdict, we find more than a scintilla of evidence that TxDOT's negligence was a proximate cause of the collision which resulted in Powell's death. We overrule TxDOT's first point.

### HABIT TESTIMONY

In its second point on appeal, TxDOT argues that the trial court erred in excluding Morrison's testimony regarding his habit, or previous knowledge, of where he stopped for the stop sign and the conditions at the intersection prior to the wreck. In order to preserve error in the exclusion of evidence, the proponent of the evidence must offer the evidence at trial, and the record must reflect the trial objection and the trial court's ruling on the objection. [14] TxDOT has not preserved this point for our review because it did not offer the evidence at trial.

While the record contains Plaintiff Olson's pretrial written objections to Morrison's testimony of habit, there is no record to indicate that these objections were presented to the trial court at trial or that the trial judge ruled on them. At trial, TxDOT never offered the testimony concerning Morrison's habitually stopping at the stop sign into evidence. Rather than objecting to the habit testimony not yet offered, Olson specifically declined to object as follows:

> [TXDOT'S COUNSEL]: I believe counsel may have an objection. I'll wait for him to locate that.
>
> [PLAINTIFF'S COUNSEL]: No. Thank you....
>
> [TXDOT'S COUNSEL]: Stopping there. Actually, if I could continue, and I think maybe counsel has an objection.
>
> [Counsel conferred.]
>
> THE COURT: Counsel, if you'll just tell us the page number and read the question and then if he has an objection, we can hear it.

---

**12.** *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986).

**13.** *See Bevers v. Soule,* 909 S.W.2d 599, 602–03 (Tex.App.—Fort Worth 1995, no writ).

**14.** *See* Tex.R. Evid. 103(a); Tex.R.App. P. 33.1(a).

[OLSON'S COUNSEL]: I don't have an objection. Keep on going.

Following this exchange, TxDOT offered portions of Morrison's deposition concerning the condition of the grass, his lack of recollection of the accident, how long he had resided in the neighborhood near the intersection, and whether he recalled the first time he ever stopped at the stop sign. TxDOT, however, then concluded its offer of Morrison's deposition and called its next witness without ever offering the portions of the deposition concerning Morrison's habit.

At no time during trial did Olson present an objection concerning habit evidence to the trial court. Consequently, the record reflects no trial court ruling sustaining any objection and no trial court ruling excluding any of Morrison's testimony on habit. TxDOT asked only to make a bill of exception at the conclusion of its case. Although TxDOT said it would like to re-offer the habit testimony, it did not do so. Nor does the record reflect that TxDOT had offered the habit testimony earlier when it offered other portions of Morrison's testimony. When TxDOT said it understood the trial court had already ruled the habit evidence inadmissible, the trial court attempted to correct TxDOT's misunderstanding of the record. The following exchange occurred:

> [TXDOT'S COUNSEL]: Judge, at this time we'd like to re-offer deposition portions of Arthur Morrison on habit and as far—In accordance with the Court's ruling, it's my understanding that the Court has already ruled that that is not admissible as habit evidence in this case.
>
> THE COURT: There is no predicate on that.
>
> [TXDOT'S COUNSEL]: I would like an opportunity to make my bill of exceptions on that and pending—
>
> THE COURT: Subject to that?
>
> [TXDOT'S COUNSEL]: Subject to that, I rest.

Because TxDOT never offered the evidence and because there was no trial objection or trial court ruling, TxDOT presents nothing

for our review. We overrule TxDOT's second point.

## EXPERT TESTIMONY

■ In its third point on appeal, TxDOT, still conceding its negligence, argues that the trial court erred in admitting the opinion testimony of Plaintiff's expert, Roy Anderson, on negligence because the opinion was based on an unreliable foundation of an unproven fact, whether or not Morrison stopped at the sign, and on a wrong legal standard of negligence. TxDOT does not, however, inform us of a rule of evidence that it feels was violated or of a rule upon which it bases this point on appeal.

At trial TxDOT objected to allowing Anderson to testify that the placement of the stop sign was negligent because no eyewitness saw Morrison stop at the sign and because Anderson had no legal training that would allow him to testify to a legal conclusion. TxDOT objected to any testimony by Anderson about the sight distance from the sign and the sign's lack of credibility, which were two of the several bases for Anderson's conclusion that the placement was negligent. In rather circular reasoning, TxDOT argued that if Anderson testified about the sight distance from the sign, the vegetation, or the lack of sign credibility, that would be evidence of negligent placement. TXDOT argued that this testimony would mislead the jury because no eyewitness testified that Morrison stopped at the sign.

Although TxDOT's brief contains this same circular reasoning, it seems that on appeal TxDOT complains that Anderson's testimony was not relevant. TxDOT states in its brief that "[t]he trial court had a duty to determine that the evidence was relevant prior to admitting it." TxDOT seems to be making a rule 402 argument that Anderson's testimony is inadmissible because it is not relevant.[15] Additionally, TxDOT seems to be arguing under rule 403 that although relevant, Anderson's testimony should have been excluded because its probative value was substantially outweighed by the danger of unfair

---

15. Tex.R. Evid. 402.

prejudice, confusion of the issues, or misleading the jury.[16]

■ To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion.[17] If a party fails to do this, error is not preserved, and the complaint is waived.[18] The complaint on appeal must be the same as that presented in the trial court.[19] An appellate court cannot reverse based on a complaint not raised in the trial court.[20]

Unfortunately for TxDOT, its complaint on appeal does not comport with its trial objections. Although at trial TxDOT used some of the language of rules 402 and 403, TxDOT insisted that it was making a rule 702 objection relating to when a witness who is qualified as an expert may testify.[21] The following exchange occurred outside the presence of the jury:

[PLAINTIFF'S COUNSEL]: I don't— Is the objection Rule 403?

[TXDOT'S COUNSEL]: I'm sorry?

[PLAINTIFF'S COUNSEL]: Is the objection you're making Rule 403? I'm not sure what rule—

[TXDOT'S COUNSEL]: Yes, sir.

[PLAINTIFF'S COUNSEL]:—we're in. I mean, if it's 403, then the relevance -

[TXDOT'S COUNSEL]: I think it's 702.

[PLAINTIFF'S COUNSEL]:—the prejudicial effect outweighs the relevance -

[TXDOT'S COUNSEL]: I think it's 702.

THE COURT: We're talking about— We're talking about expert witnesses here and the qualification of the expert witness.

■ A specific objection is one that enables the trial court to understand the precise grounds so as to make an informed ruling and that affords the offering party an opportunity to remedy any defect, if possible.[22] The trial court understood the grounds of TxDOT's objection to be qualification of an expert witness, and TxDOT twice confirmed to the trial court that it was making a 702 objection. If TxDOT was attempting to make a rule 402 or rule 403 relevance objection at trial, its objection was not specific enough to enable the judge to understand the grounds of TxDOT's objection. TxDOT's trial objections do not comport with its point on appeal. TxDOT therefore has failed to preserve this point for our review.

■ Furthermore, "[a] party on appeal should not be heard to complain of the admission of improper evidence offered by the other side, when he, himself, introduced the same evidence or evidence of a similar character."[23] On direct examination by Olson, Anderson testified that the sign was negligently placed, that the placement of the sign was not in accordance with the Texas Manual of Uniform Traffic Control Devices, that the location of the stop sign created a dangerous condition, that drivers may ignore a sign this far back, that this sign is not a credible sign, that the view from the sign was obstructed due to the shrubbery, and that there is not adequate sight distance at the intersection.

TxDOT also called Anderson as a witness by reading portions of his deposition during its case in chief. On direct examination, TxDOT elicited evidence similar to the evidence Olson had elicited, including testimony

---

16. TEX.R. EVID. 403.

17. See TEX.R.APP. P. 33.1(a); see also TEX.R. EVID. 103(a)(1).

18. See Bushell v. Dean, 803 S.W.2d 711, 712 (Tex.1991) (op. on reh'g).

19. See Banda v. Garcia, 955 S.W.2d 270, 272 (Tex.1997); Rogers v. Stell, 835 S.W.2d 100, 101 (Tex.1992).

20. See Banda, 955 S.W.2d at 272.

21. TEX.R. EVID. 702.

22. See TEX.R.APP. P. 33.1(a); TEX R. EVID. 103(a)(1); McKinney v. National Union Fire Ins. Co., 772 S.W.2d 72, 74 (Tex.1989) (op. on reh'g).

23. Southwestern Elec. Power Co. v. Burlington N. R.R. Co., 966 S.W.2d 467, 473 (Tex.1998) (quoting McInnes v. Yamaha Motor Corp., 673 S.W.2d 185, 188 (Tex.1984), cert. denied, 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985)); Harwood Tire–Arlington, Inc. v. Young, 963 S.W.2d 881, 887 (Tex.App.—Fort Worth 1998, pet. dism'd by agr.).

on sight distance from the stop sign, sign placement, and sign credibility. TxDOT even attempted to elicit evidence of proximate cause, but the trial court reminded TxDOT that its own objection to Anderson's testimony on proximate cause had been sustained. Furthermore, TxDOT did not object when Olson offered testimony of Lee Jackson and Ralph Apodaca, and in fact TxDOT itself offered testimony from the same two witnesses. The testimony of Jackson and Apodaca constitutes evidence of a similar character as that of Anderson's testimony, in that both testified to the location of the sign and the presence of shrubbery.

TxDOT has waived any error as to Anderson's testimony because TxDOT introduced evidence of a similar character through its own examinations of Anderson, Jackson, and Apodaca. For all these reasons, we overrule TxDOT's third point.

### HOLDING

We hold that there is more than a scintilla of evidence to support the jury's finding that TxDOT's negligence was a proximate cause of the accident, that TxDOT failed to preserve the question of Morrison's testimony for our review, and that TxDOT both failed to preserve and waived any error as to the admission of Anderson's testimony. We therefore affirm the judgment of the trial court.