Opinion issued December 23, 2004













In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01100-CV
____________

WALD-TINKLE PACKAGING & DISTRIBUTION, INC., Appellant

V.

EUGENIO PINOK, Appellee

* * *




NO. 01-02-01100-CV
____________

 EUGENIO PINOK, Appellant

V.

WALD-TINKLE PACKAGING & DISTRIBUTION, INC., Appellee





On Appeal from the 165th District Court 
Harris County, Texas
Trial Court Cause No. 2001-17219




MEMORANDUM OPINION
          Appellant, Wald-Tinkle Packaging & Distribution, Inc. (“Wald-Tinkle”),
appeals a jury verdict rendered in favor of appellee, Eugenio Pinok, on his non-subscriber negligence claims against Wald-Tinkle. In Wald-Tinkle’s appeal, we
determine whether (1) the trial court erred in admitting evidence under Texas Rule
of Civil Procedure 193.6,


 (2) the evidence was legally and factually sufficient to
support the jury’s negligence finding, (3) the evidence was legally and factually
sufficient to support the award of past medical expenses, (4) the evidence was legally
and factually sufficient to support the award of lost wages, and (5) the trial court erred
in allegedly denying Wald-Tinkle’s proposed sole-proximate-cause and new-and-independent-cause jury instructions. In Pinok’s appeal, we determine whether the
trial court erred in disregarding the jury’s award of damages for past and future
physical impairment. We affirm.Background
          Pinok was employed as a laborer at Wald-Tinkle, a warehousing, packaging,
and distribution company, for about two years. Pinok’s job included stacking the
bags that came off a conveyor system. The conveyor system consisted of a motorized
conveyor belt, followed by non-motorized rollers. The bags traveled up the conveyor
belt to the rollers; as the bags moved from the conveyor belt onto the rollers, Pinok
removed the bags and stacked them on pallets. Pinok’s training consisted largely of
watching co-workers perform the same work.
          On October 17, 2000, Pinok sustained an abrasive, third-degree burn when his
arm got stuck between the conveyor belt and the rollers as he attempted to free a bag
that had gotten stuck.


 Pinok had not turned off the power to the conveyor belt before
attempting to remove the wedged bag. Another Wald-Tinkle laborer turned off the
power after the accident and helped Pinok to free his arm.
          Pinok underwent medical treatment for the wound through February 14, 2001. 
Through early December 2000, he reported to work every day, but performed only
light duty because of his injury. Pinok ceased working at Wald-Tinkle in early
December 2000 upon the advice of his current medical provider. Pinok began
working for another employer in April 2001. 
          Pinok later sued Wald-Tinkle for negligence relating to the accident. The
theories of negligence that Pinok pursued at trial were (1) failure to train on how to
remove bags properly, (2) failure to warn of the dangers of removing bags
improperly, and (3) failure to provide a safe work place because the rollers were
maladjusted. A jury found Wald-Tinkle negligent and awarded Pinok $73,949.63 in
damages.


 The trial court granted Wald-Tinkle’s motion for judgment
notwithstanding the verdict (“JNOV”) in part, but only to the extent that the jury had
awarded $8,000 in damages for past and future physical impairment. Wald-Tinkle’s
motion for new trial was overruled by operation of law.
Wald-Tinkle’s Appeal
A.      Admission of Evidence of Failure to Train and to Warn
          In its first argument under its first issue, Wald-Tinkle contends that the trial
court erred in admitting evidence on two of Pinok’s negligence theories—the failure
to train and to warn—because Pinok had untimely supplemented his initial-disclosure
responses to include these negligence theories. Wald-Tinkle argues that, under Rule
of Civil Procedure 193.6(b), Pinok did not show good cause for his untimely
supplement and did not show that Wald-Tinkle would not be unfairly surprised or
prejudiced thereby. See Tex. R. Civ. P. 193.6(b).
          A party who fails to supplement a discovery response in a timely manner may
not introduce into evidence the material or testimony that was not timely disclosed
unless the trial court finds that there was good cause for the failure or unless the
failure will not unfairly surprise or prejudice the other party. Id. The burden of
establishing good cause or lack of unfair surprise or prejudice is on the party seeking
to introduce the evidence. Id. We review a trial court’s admission or exclusion of
evidence under an abuse-of-discretion standard. E.I. du Pont de Nemours & Co., Inc.
v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995). The test for abuse of discretion is
whether the trial court acted without reference to any guiding rules or principles. 
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). 
          In its requests for initial disclosure, Wald-Tinkle asked Pinok to disclose the
legal theories and factual bases of his claims. Pinok timely responded:
Negligence. Premises Liability. Plaintiff injured his left arm on
Defendant’s premises as a result of a machine that was maladjusted that
grabbed Plaintiff’s left arm.
On April 2, 2002, fewer than 30 days before trial, Pinok supplemented this response
as follows: 
Negligence. Premises Liability. Plaintiff injured his left arm on
Defendant’s premises as a result of a machine that was maladjusted that
grabbed Plaintiff’s left arm. Defendant provided no training to its
employees in how to remove a stuck bag. Defendant failed to warn its
employees to turn the machine off first before attempting removal of a
stuck bag.
          On the first day of trial, Wald-Tinkle filed a written motion to strike the quoted
supplemental response, claiming that Pinok had not timely supplemented his initial-disclosure responses to assert the two new negligence theories and requesting that the
trial court exclude any evidence relating to the new theories. The trial court denied
the motion verbally.
          At trial, Pinok presented evidence supporting his failure-to-train and failure-to-warn negligence theories without objection. Instead of objecting during trial, Wald-Tinkle proposed a charge limiting negligence to “[t]he existence, if any, of an unsafe
condition in the workplace in the form of a maladjusted space between the conveyor
belt and the metal rollers.” Because Wald-Tinkle did not object when the
complained-of evidence was admitted, Wald-Tinkle waived its rule-193.6 complaint. 
See Clark v. Trailways, Inc., 774 S.W.2d 644, 647 (Tex. 1989) (holding that, by
failing to object when undisclosed witness is offered at trial, even after trial court has
overruled request disallowing testimony of witness, party waives complaint about
untimeliness of adverse party’s supplementation of discovery response relating to
identity of witnesses appearing at trial). 
          Moreover, even were this challenge not waived, we could not hold, on this
record, that the trial court abused its discretion. First, statements by Wald-Tinkle’s
counsel during trial indicate that the trial court considered and ruled on Wald-Tinkle’s rule 193.6 motion during in limine discussions, but no part of the in limine
discussions appear in our record. We thus have no way of knowing what, if anything,
might have been discussed concerning good cause or lack of unfair surprise or
prejudice. Accordingly, even if the issue were not waived, we could not conclude
that the trial court abused its discretion in implicitly determining either good cause
or lack of unfair surprise or prejudice.



          We overrule this challenge under Wald-Tinkle’s first issue.
B.      Legal- and Factual-Sufficiency Challenges to Negligence Finding
          In its second through fourth arguments under its first issue, Wald-Tinkle
contends that (1) Wald-Tinkle had no duty to train or to warn Pinok; (2) even if
Wald-Tinkle had a duty to train, the evidence is legally and factually insufficient to
show that Wald-Tinkle breached that duty; (3) the evidence is legally and factually
insufficient to show that a duty to warn or to train proximately caused Pinok’s
injuries; and (3) the evidence is legally and factually insufficient to support Pinok’s
“maladjustment” negligence claim.
          In reviewing a legal-sufficiency challenge of a finding on which the appellee
had the burden of proof, we consider all the evidence in the light most favorable to
the party in whose favor the verdict was rendered. King Ranch, Inc. v. Chapman, 118
S.W.3d 742, 750-51 (Tex. 2003). Every reasonable inference deducible from the
evidence must be indulged in that party’s favor. Id. A no-evidence point will be
sustained when (1) there is a complete absence of evidence of a vital fact, (2) the
court is barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more
than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the
vital fact. Id. Less than a scintilla of evidence exists when the evidence is “so weak
as to do no more than create a mere surmise or suspicion.” Kindred v. Con/Chem,
Inc., 650 S.W.2d 61, 63 (Tex. 1983).
          In conducting a factual-sufficiency challenge to a jury finding on which the
appellee had the burden of proof, we consider and weigh all of the evidence and set
aside the verdict only if it is so contrary to the overwhelming weight of the evidence
as to be clearly wrong and manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986); City of Houston v. Jackson, 135 S.W.3d 891, 904 (Tex. App.—Houston
[1st Dist.] 2004, pet. dism’d w.o.j.). We thus examine both the evidence supporting
and contrary to the judgment. See Plas-Tex, Inc. v. U. S. Steel Corp., 772 S.W.2d
442, 445 (Tex. 1989).
          1.       Negligence Claim Based on Failure to Warn and to Train
                    a.       Duty
          Wald-Tinkle first complains that it had no duty to train or to warn Pinok
because Pinok’s job was not complex or hazardous, the danger was open and obvious,
and Pinok was experienced. 
          “[T]he existence of duty is a question of law for the court to decide from the
facts surrounding the occurrence in question.” Greater Houston Transp. Co. v.
Phillips, 801 S.W.2d 523, 525 (Tex. 1990). Although an employer is not an insurer
of its employee’s work safety, it has a duty to use ordinary care in providing a safe
place to work. Leitch v. Hornsby, 935 S.W.2d 114, 117 (Tex. 1996). This duty
includes providing rules and regulations for the safety of employees, warning
employees of the hazards of their employment, and supervising employees’ activities. 
Farley v. MM Cattle Co., 529 S.W.2d 751, 754 (Tex. 1975); Nat’l Convenience
Stores, Inc. v. Matherne, 987 S.W.2d 145, 149 (Tex. App.—Houston [14th Dist.]
1999, no pet.). An employer has no duty, however, to adopt safety rules when its
business is neither complex nor hazardous or when the dangers incident to the work
are obvious or are of common knowledge and are fully understood by the employee. 
Matherne, 987 S.W.2d at 149. Similarly, the duty to warn or to caution an employee
of a danger arises when (1) the employment is of a dangerous character requiring skill
and caution for its safe and proper discharge and (2) the employer is aware of the
danger and has reason to know that the employee is unaware of the danger. Id. An
employer’s duty to instruct applies to an inexperienced employee, but not to one who
is experienced in the work that he is assigned. Farley, 529 S.W.2d at 754; Matherne,
987 S.W.2d at 149. Thus, the age and experience of the employee should be
considered in measuring the employer’s duty. Farley, 529 S.W.2d at 754; see also
Humble Sand & Gravel, Inc. v. Gomez, 146 S.W.3d 170, 186 (Tex. 2004).
          The following “facts surrounding the occurrence in question” support the trial
court’s legal determination that Wald-Tinkle had a duty to warn or to train Pinok. See
Phillips, 801 S.W.2d at 525. Pinok could neither read nor speak English. Pinok’s
initial training consisted of watching co-workers perform his task. Pinok testified that
he never received training on how to remove stuck bags from the conveyor-belt
system. He specifically testified that Wald-Tinkle never trained him to turn off the
conveyor-belt power if there was “a problem on the line.” Pinok testified that he saw
bags getting stuck between the conveyor belt and the rollers “many times,” sometimes
(depending on the material that the bags contained) up to 20 to 30 times per day; that
he learned how to remove stuck bags from watching his co-workers; and that he
pulled the bag out on the day that he was injured in the same manner that his co-workers always did. Pinok testified that he was “sure” that his supervising team
leader, Serapio Portillo, had seen workers pulling stuck bags out in this fashion, but
that neither he nor any other supervisor had instructed the workers to pull stuck bags
out in any other fashion.



          This evidence supported Pinok’s underlying trial theory: that Wald-Tinkle
knowingly allowed him to be trained improperly in the first place and then did not
rectify the situation with proper training or warnings. The trial court thus reasonably
could have concluded that, if Pinok was experienced, he was experienced in how not
to perform his work. And, given the evidence that Pinok performed his work in this
improper fashion accident-free for two years, the trial court also could have
concluded that Wald-Tinkle was “aware of the danger and ha[d] reason to know that
[Pinok was] unaware of the danger” and that “the dangers incident to the work” were
not “obvious or . . . of common knowledge” or “fully understood by [Pinok].” See
Matherne, 987 S.W.2d at 149; W.E. Grace Mfg. Co. v. Arp, 311 S.W.2d 278, 281
(Tex. Civ. App.—Dallas 1956, writ ref’d n.r.e.).
          Wald-Tinkle nonetheless responds that it had no duty to train or to warn Pinok
because he had two years’ experience working the conveyor belt without injury,
because his tasks were not hazardous or dangerous, because removing bags from the
conveyor system did not require specialized training, and because any danger
involved in removing stuck bags was obvious. We disagree. Wald-Tinkle presented
evidence below—in the alternative to its argument that it had no duty to train—that
it trained its employees not to remove stuck bags without first shutting off the
conveyor belt’s power. Based on Wald-Tinkle’s own evidence, the trial court
reasonably could have concluded that even Wald-Tinkle thought that there was a duty
to train because its witnesses testified that they provided that training—regardless of
whether the trial court or jury ultimately believed that Wald-Tinkle actually provided
that training. Additionally, on cross-examination, Mr. Tinkle himself responded
affirmatively to the following hypothetical question: 
If [Wald-Tinkle] was aware that their employees would run up and grab
bags and try to unstick them the way we’ve been discussing in this case
you would agree that you guys had a responsibility to inform your
employees, all of your employees, hey, we don’t do it like that. That’s
not safe. You need to shut the power off. You don’t get up and do that
kind of act?
Furthermore, as discussed above, Pinok’s theory that Wald-Tinkle knowingly allowed
him to be trained to work in a dangerous manner—i.e., that he was allowed to become
experienced in how not to perform this aspect of his work—makes largely irrelevant
his work experience or any argument that the potential dangers would otherwise be
obvious or that the job did not require specialized training.
          We hold that the trial court did not err in concluding that Wald-Tinkle had a
duty to warn Pinok about the danger of dislodging bags without first turning off the
power or a duty to train Pinok on how to remove lodged bags safely. Accordingly,
we overrule this portion of Wald-Tinkle’s first issue.
                    b.       Breach
          Wald-Tinkle argues alternatively that, even if it had a duty to train or to warn
Pinok, the evidence is legally and factually insufficient to show that Wald-Tinkle
failed to do so.



          We first note that Pinok’s evidence, set out above, that he was not trained or
warned was legally sufficient to support the jury’s implicit finding of breach. 
Additionally, one of Pinok’s co-workers at the conveyor belt had worked for Wald-Tinkle for about a week, but had not yet been told where the conveyor belt’s off
switch was. In response, Wald-Tinkle notes that it produced evidence that it actually
trained its employees at periodic training sessions to turn off the power before
removing stuck bags from the conveyor system. Additionally, Wald-Tinkle points
to its employee safety and training manual, which instructed employees not to “bring
[their] hands or bodies in close proximity of any rotating part of a machine or tool”;
the manual also recited that all “new employees [would be] trained in safe work
practices of their jobs” and that training would cover “any unsafe work practices
observed.”
          The evidence on which Wald-Tinkle relies does not render the jury’s verdict
clearly wrong or manifestly unjust. First, although the employee safety and training
manual contained an “employee acknowledgment” page for the employee to
acknowledge having received the manual’s information, Wald-Tinkle produced no
acknowledgment signed by Pinok. Additionally, the manual was in English, and
Pinok spoke only Spanish; Mr. Tinkle testified that the manual was translated into
Spanish for the employees, but Pinok testified that no supervisor had instructed him
on safety rules before he began working. Additionally, the periodic-training
attendance sheets that Pinok signed did not expressly show that the subject of how
to remove stuck bags was covered in those training sessions.


 None of the items to
which Wald-Tinkle points is thus dispositive in its favor, and the evidence concerning
whether Pinok was actually trained was hotly disputed. The jury could simply have
believed Pinok’s version of events over the version to which Wald-Tinkle’s witnesses
testified. See Trans Am. Holding, Inc. v. Market-Antiques & Home Furnishings, Inc.,
39 S.W.3d 640, 648 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (holding that
jury decides witnesses’ credibility and weight to be given testimony and may believe
part of witness’s testimony or disregard it); M.D. Anderson Hosp. & Tumor Inst. v.
Felter, 837 S.W.2d 245, 248 (Tex. App.—Houston [1st Dist.] 1992, no writ) (holding
that resolving conflicts in witnesses testimony is for jury). 
          We hold that, viewing the evidence in the light most favorable to Pinok, as set
out immediately above, some evidence showed that Wald-Tinkle breached its duties
to Pinok. We further hold that, viewing all of the evidence discussed above neutrally,
the jury’s finding that Wald-Tinkle breached these duties is not clearly wrong or
manifestly unjust. 
          Accordingly, we overrule this portion of Wald-Tinkle’s first issue.
                    c.       Proximate Cause
          Wald-Tinkle next asserts that the evidence is legally insufficient to show that
Wald-Tinkle’s failure to warn and to train Pinok proximately caused Pinok’s injury.


 
Specifically, Wald-Tinkle argues that Pinok did not (1) show that he would have
acted differently had he been warned or trained or (2) “provide[] any occupational
safety expert or cite to any workplace regulations to demonstrate how Wald-Tinkle’s
alleged failure to meet a minimum standard of care brought about [his] injury.”
          A plaintiff must plead and prove that the defendant’s negligence is the
proximate cause of his injury. Leitch, 935 S.W.2d at 118. “The question of
proximate cause is one of fact particularly within the province of a jury, and a jury
finding on proximate cause will be set aside only in the most exceptional
circumstances.” Tex. Dept. of Transp. v. Olson, 980 S.W.2d 890, 893 (Tex.
App.—Fort Worth 1998, no pet.). Proximate cause cannot be established by “mere
conjecture, guess, or speculation,” but must be proved by evidence of probative force. 
Excel Corp. v. Apodaca, 81 S.W.3d 817, 820 (Tex. 2002). Proximate cause may be
established by either direct or circumstantial evidence. See id. 
           Proximate cause consists of cause-in-fact and foreseeability. Leitch, 935
S.W.2d at 118. The test for cause-in-fact is whether the act or omission was a
substantial factor in causing the injury, without which the harm would have not
occurred. Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex.
1995). To establish cause in fact, or “but for” causation, a party must show that the
defendant’s negligence was a substantial factor in bringing about his injury and was
a factor without which no harm would have been incurred. Apodaca, 81 S.W.3d at
820. The test for foreseeability is whether a person of ordinary intelligence would
have anticipated the danger that his or her negligence created. Id. Foreseeability,
however, does not require a person to anticipate the precise manner in which injury
will occur once he has created a dangerous situation through his negligence. Id. 
Forseeability requires only that the general danger, not the exact sequence of events
that produced the harm, be foreseeable. Id. 
          We hold that Pinok presented some evidence from which the jury could have
found proximate cause. First, Pinok’s evidence, viewed in the appropriate light,
showed that Wald-Tinkle knowingly allowed its employees to be trained incorrectly
in how to remove stuck bags and then did not correct the situation with proper
training or warnings; the testimony of Wald-Tinkle’s own witnesses also indicated,
as discussed above, that Wald-Tinkle thought that the possibility of injury from
removing stuck bags improperly merited training. Based on this evidence, a jury
rationally could have concluded that a person of ordinary intelligence would have
anticipated the danger that his or her negligence created. See id. Viewing the same
evidence—in addition to Pinok’s testimony of how the accident occurred—in the
appropriate light and indulging all reasonable inferences therefrom, the jury also
rationally could have found that Wald-Tinkle’s not training or warning Pinok of this
danger was a substantial factor in bringing about his injury. See id. In this regard,
expert testimony concerning workplace regulations was not necessary. Simply put,
this is not one of those “most exceptional circumstances” in which a jury’s factual
finding of proximate cause should be set aside. See Olson, 980 S.W.2d at 893.
          Accordingly, we overrule this portion of Wald-Tinkle’s first issue.
          2.       Negligence Claim Based on Maladjustment of Equipment
          Finally, Wald-Tinkle complains that the evidence is legally and factually
insufficient to support Pinok’s maladjustment negligence claim because Pinok did not
offer expert testimony about how large the space between the conveyor-belt rollers
should have been. 
          Pinok asserted two other theories of negligence besides his maladjustment
claim, including negligence for failure to train and to warn. We have already found
that the evidence is legally and factually sufficient to support liability under those two
other negligence theories. The trial court gave the jury a broad-issue negligence
instruction that was not limited to any one negligence theory. We may uphold the
judgment on any legal theory supported by the evidence. Houser v. Smith, 968
S.W.2d 542, 546 (Tex. App.—Austin 1998, no pet.).
          Accordingly, we do not reach this portion of Wald-Tinkle’s first issue.
C.      Legal- and Factual-Sufficiency Challenge to Past-Medical-Care Expenses
          In its second issue, Wald-Tinkle contends that the evidence is legally and
factually insufficient to support the award of past medical expenses because Pinok
did not present evidence of “the reasonableness or necessity of the medical expenses”
or evidence establishing “a causal nexus between the accident and the medical
expenses.” 
          1.       Reasonableness and Necessity
          A claim for past medical expenses must be “supported by evidence that such
expenses were reasonably necessary for the plaintiff to incur as a result of his
injuries.” Transport Concepts, Inc. v. Reeves, 748 S.W.2d 302, 305 (Tex.
App.—Dallas 1988, no writ). “Unless a controverting affidavit is filed as provided
by this section, an affidavit that the amount a person charged for a service was
reasonable at the time and place that the service was provided and that the service
was necessary is sufficient evidence to support a finding of fact by judge or jury that
the amount charged was reasonable or that the service was necessary.” Tex. Civ.
Prac. & Rem. Code Ann. § 18.001(b) (Vernon Supp. 2004-2005). “The affidavit
must: . . . be made by: . . . the person who provided the service; or . . . the person in
charge of records showing the service provided and charge made . . . .” Id.
§ 18.001(c)(2) (emphasis added). Thus, section 18.001(a) “creates an exception to
the general rule requiring expert testimony” to show reasonableness and necessity of
medical expenses. Rodriguez-Narrera v. Ridinger, 19 S.W.3d 531, 532 (Tex.
App.—Fort Worth 2000, no pet.). “So long as the requirements of section 18.001 are
met and the opponent does not file a controverting affidavit, a party may dispense
with the inconvenience and expense of obtaining an expert to testify as to the
necessity and reasonableness of the expenses.” Id.
          Pinok offered into evidence his medical bills and three affidavits executed by
the custodians of records at the medical facilities at which Pinok had obtained
treatment for his injury. Each affiant averred that “[t]he amount charged for the
services were [sic] reasonable at the time and place [that] the services were provided,
and the services were necessary for the proper care and treatment of the patient.” See
Tex. Civ. Prac. & Rem. Code Ann. § 18.001(c) (allowing custodian of medical
records to establish, in affidavit meeting certain requirements, the reasonableness and
necessity of services rendered). Wald-Tinkle did not present any counter-affidavits
disputing the reasonableness or necessity of these expenses. See id. § 18.001(e) (“A
party intending to controvert a claim reflected by the affidavit must file a
counteraffidavit with the clerk of the court and serve a copy of the counteraffidavit
. . . [within certain time period or with leave of court].”); § 18.001(a) (“Unless a
controverting affidavit is filed . . ., an affidavit . . . is sufficient evidence to support
a finding of fact . . . .”) (emphasis added). Accordingly, the custodian-of-record
affidavits submitted by Pinok sufficed to support a fact finding concerning
reasonableness and necessity of Pinok’s medical expenses. See id.
          At trial, Pinok offered, and the trial court admitted, the three records
custodians’ responses to depositions on written questions, in which they averred that
they were unqualified to testify to the reasonableness and necessity of Pinok’s
medical expenses. Wald-Tinkle argues that the custodians’ deposition responses
function as counter-affidavits for purposes of section 18.001(e), thus negating entirely
the effect of the custodians’ section-18.001(a) affidavits. We disagree. Section
18.001(e) has specific requirements for counter-affidavits, which the custodians’
deposition responses do not meet. See id. § 18.001(e) (requiring that counter-affidavits be served within certain time period); id. § 18.001(f) (requiring that
counter-affidavit give reasonable notice of basis on which party plans to controvert
initial affidavit’s claim at trial and that counter-affidavit be made by person “who is
qualified, by knowledge, skill, experience, training, education, or other expertise, to
testify in contravention of all or part of any of the matters contained in the initial
affidavit.”); Turner v. Peril, 50 S.W.3d 742, 747 (Tex. App.—Dallas 2001, pet.
denied) (“We conclude section 18.001 places a greater burden of proof on
counteraffidavits [than on initial affidavits] to discourage their misuse in a manner
that frustrates the intended savings.”). What the custodians’ deposition responses did
accomplish, however, was to raise a fact issue for the jury to consider when assessing
the weight and credibility to give the custodians’ section-18.001(a) affidavits. See
id. § 18.001(a). The jury could have found the custodians’ affidavit testimony
concerning reasonableness and necessity credible, despite the inconsistent testimony
in the custodians’ deposition-on-written-questions answers, and based its damages
verdict on that testimony. Cf. Trans Am. Holding, Inc., 39 S.W.3d at 648 (holding
that jury decides witnesses’ credibility and weight to be given testimony and may
believe part of witness’s testimony or disregard it); cf. also Manzi v. State, 88 S.W.3d
240, 244 (Tex. Crim. App. 2002) (holding that deferential review applies to trial
court’s suppression-hearing determination of historical facts developed solely by
conflicting affidavit testimony).
          We hold that the evidence is legally and factually sufficient to show that
Pinok’s medical expenses were reasonable and necessary.
          2.       Causal Nexus
          Wald-Tinkle next argues that Pinok did not present evidence establishing a
causal nexus between the accident and his medical expenses. 
          An injured party who receives medical treatment may recover only those
medical expenses incurred as a result of the injuries suffered in the occurrence
involved in the litigation. Texarkana Mem’l Hosp., Inc. v. Murdock, 946 S.W.2d 836,
839-40 (Tex. 1997). An affidavit concerning reasonableness and necessity submitted
under section 18.001(a) generally does not establish a causal nexus between the
injury and medical expenses. See Sloan v. Molandes, 32 S.W.3d 745, 752 (Tex.
App.—Beaumont 2000, no pet.); Beauchamp v. Hambrick, 901 S.W.2d 747, 749
(Tex. App.—Eastland 1995, no writ).
          We hold that Wald-Tinkle waived this challenge in two ways. First, Wald-Tinkle did not timely assert this challenge on appeal. Wald-Tinkle first raised this
challenge in its reply brief,


 and the new argument does not appear to have been made
in response to anything asserted in Pinok’s brief. See Tex. R. App. P. 38.8 (“The
appellant may file a reply brief addressing any matter in the appellee’s brief.”)
(emphasis added). Accordingly, Wald-Tinkle has waived that challenge. See Howell
v. TWCC, 143 S.W.3d 416, 439 (Tex. App.—Austin 2004, no pet. h.) (“The rules of
appellate procedure do not allow an appellant to include in a reply brief a new issue
in response to some matter pointed out in the appellee’s brief but not raised by
appellant’s original brief.”); Penley v. Westbrook, 146 S.W.3d 220, 227 (Tex.
App.—Fort Worth 2004, pet. filed) (“A reply brief may not be used to raise new
complaints”); see also Barrios v. State, 27 S.W.3d 313, 322 (Tex. App.—Houston
[1st Dist.] 2000, pet. ref’d).
          Second, Wald-Tinkle did not preserve this challenge below. No-evidence
complaints may be preserved in a motion for directed verdict, motion to disregard,
motion for JNOV, motion for new trial, or in objections to the charge. T.O. Stanley
Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 220-21 (Tex. 1992). A factual-sufficiency challenge to a jury verdict is preserved in a motion for new trial. Tex. R.
Civ. P. 324(b)(2). Wald-Tinkle did not raise these challenges in any of these ways.


 
Wald-Tinkle’s only reference below that we have found to a causal connection
between the injury and medical treatment is an evidentiary objection—made during
an objection to Pinok’s testimony in his case-in-chief, when more witnesses were still
to be called in Pinok’s support—to the admission of some of the medical records. 
This objection does not preserve a sufficiency challenge. See id.; T.O. Stanley Boot
Co., 847 S.W.2d at 220-21.
          We overrule Wald-Tinkle’s second issue.
D.      Legal- and Factual-Sufficiency Challenge to Lost Wages
          In its third issue, Wald-Tinkle contends that the evidence is legally and
factually insufficient to support the award of lost wages. 
          During written discovery, Pinok responded that he sought $6,160 for past lost
wages from October 17, 2000, the day of his injury, until April 20, 2001, the day that
he began working at a new company, Market Recycling. Pinok testified that, before
his injury, Wald-Tinkle had paid him $7 per hour for 40 hours of work a week. On
cross-examination, Pinok testified that, after the accident, he had returned to full-time
work on “modified duty” until early December 2000. Pinok also testified on cross-examination that he was paid his “full wages” during that time. Wald-Tinkle’s
payroll records indicated that, from the time of Pinok’s injury through December 8,
2000, Pinok had been paid $7 per hour for 40 hours’ work each week after the day of
his injury, for a total of $1,904. The jury awarded Pinok $5,040 in past lost wages.
          Wald-Tinkle argues that the jury’s award should be reduced to $4,256, the
difference between $6,160, the amount of lost wages for which Pinok had pleaded,
and $1,904, the amount of wages that Wald-Tinkle had paid Pinok following his
injury. However, Wald-Tinkle’s payroll records indicated that Pinok was not paid
after December 8, 2000, when he left Wald-Tinkle. Pinok testified that he left Wald-Tinkle because his current medical provider had told him not to work; he testified that
his medical provider had explained that he could not return to work because he had
to “remain at rest” and in “absolute tranquility” and because there was “some
dirtiness” and “fumes” at the workplace. Pinok did not resume working again until
April 20, 2001.


 Therefore, Pinok did not earn any wages from December 8, 2000
through April 20, 2001, about an 18-week period. Pinok was paid $7 per hour, which
would have been $280 for a 40-hour work week, and was out of work for 18 weeks,
from the time that he left Wald-Tinkle until the time that he started at Market
Recycling. The jury may have determined its lost-wages award by multiplying 18
(the number of weeks that Pinok was unemployed) by $280, which amount is $5,040. 
          We thus hold that the evidence is legally and factually sufficient to support the
award of past lost wages to Pinok.
          We overrule Wald-Tinkle’s third issue.
E.      Failure to Give Instructions
          In a final argument under its first issue, Wald-Tinkle contends that the trial
court erred in failing to give the jury the sole-proximate-cause and new-and-independent-cause instructions that it proposed. 
          The standard of review for error in a jury charge is abuse of discretion. Tex.
Dep’t of Human Svcs. v. E. B., 802 S.W.2d 647, 649 (Tex. 1990). A trial court abuses
its discretion by acting without reference to any guiding rules or principles. Id. 
          Wald-Tinkle first claims that the trial court should have instructed the jury on
sole proximate cause because some evidence showed that Pinok was injured by
resting his arms on the conveyer-belt rollers. Contrary to what Wald-Tinkle implies,
the court’s jury charge did instruct on sole proximate cause:



There may be more than one proximate cause of an event, but if an act
or omission of any person was the “sole proximate cause” of an
occurrence, then no act or omission of any other person could have been
a proximate cause.
This instruction on sole proximate cause was substantially similar to—and in fact
more favorable than—that proposed by Wald-Tinkle:
There may be more than one proximate cause of an event, but if an act
or omission of any person not a party to the suit was the “sole proximate
cause” of an occurrence, then no act or omission of any other person
could have been a proximate cause.
(Emphasis added.) The italicized limitation contained within Wald-Tinkle’s proposed
instruction would necessarily have excluded Pinok as the sole proximate cause; the
instruction actually given did not contain such a limitation and could thus include
Pinok. There was no error.
          Wald-Tinkle also argues that the trial court erred in failing to include an
instruction on new and independent cause, based again on there having been some
evidence that Pinok had rested his arms on the rollers. Wald-Tinkle proposed such
an instruction, but the trial court gave none. A “new and independent cause” is an act
or omission of a separate and independent agency, which act destroys the causal
connection between the negligent act or omission of the defendant and the
complained-of injury and thereby becomes the immediate cause of the injury. Galvan
v. Fedder, 678 S.W.2d 596, 598 (Tex. App.—Houston [14th Dist.] 1984, no writ). 
A new and independent cause contemplates that an independent force, rather than the
alleged negligent acts of the parties, was responsible for the plaintiff’s injuries. Id.
           Here, there is no evidence that an independent force, separate and apart from
the parties’ actions, was responsible for Pinok’s injuries: Pinok’s resting his arms on
the rollers would have been a party’s negligent act, not that of a new and independent
cause. See id. Therefore, the trial court did not abuse its discretion in failing to
instruct the jury on new and independent cause. 
          We overrule Wald-Tinkle’s final argument under its first issue. 
Pinok’s Appeal
          In his sole issue on appeal, Pinok contends that the trial court erred in partially
granting Wald-Tinkle’s motion for JNOV to disregard the jury’s award of damages
for past and future physical impairment. 
          In reviewing a trial court’s ruling on a motion for JNOV, we consider only the
evidence and the reasonable inferences that support the jury’s answers, disregarding
all contrary evidence and inferences. Johnson & Johnson Med., Inc. v. Sanchez, 924
S.W.2d 925, 929 (Tex. 1996). To uphold a JNOV, we must find that no evidence
supports the jury’s challenged finding. See Mancorp, Inc. v. Culpepper, 802 S.W.2d
226, 227 (Tex. 1990). If there is more than a scintilla of competent evidence to
support the jury’s finding, the JNOV may not stand. Id. at 228.
          “‘Physical impairment’ encompasses the loss of the injured party’s former
lifestyle” and “can encompass both economic and non-economic losses, and can
include hedonic damages, or ‘loss of enjoyment of life.’” Patlyek v. Brittain, No. 03-03-00641-CV, 2004 WL 1573032, at *3 (Tex. App.—Austin July 15, 2004, pet.
denied) (citing Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 772 (Tex.
2003)). When physical impairment is submitted to the jury, the jury should be
instructed that “the effect of any physical impairment must be substantial and extend
beyond any pain, suffering, mental anguish, lost wages or diminished earning
capacity . . . .” Golden Eagle Archery, 116 S.W.3d at 772; see Patlyek, 2004 WL
1573032, at *3 (concluding that above-quoted standard from Texas Supreme’s
Court’s Golden Eagle Archery opinion is “an authoritative statement of the
substantive law underlying our ‘no evidence’ inquiry.”). Thus, to survive a no-evidence challenge to damages awarded for physical impairment, a plaintiff must
adduce “more than a scintilla of evidence that (1) he incurred injuries that are distinct
from, or extend beyond, injuries compensable as pain and suffering, loss of earning
capacity, or other damage elements; and (2) these distinct injuries have had a
‘substantial’ effect.” Patlyek, 2004 WL 1573032, at *3 (footnote omitted). The focus
should be “on whether the injuries have impeded [the] plaintiff’s ability to engage in
specific non-work related activities, such as sports, hobbies, or recreational activities. 
See id, at *4. “By focusing on actual impediments to the plaintiffs’ activities, a
reviewing court can distinguish losses comprising physical impairment from the pain,
suffering, inconvenience, or distress compensable in and of themselves through pain
and suffering or mental anguish damages. By focusing on activities unrelated to
work, a reviewing court can distinguish losses comprising physical impairment from
those comprising lost wages or earning capacity.” Id.
          The jury awarded Pinok $8,000 in damages for past and future physical
impairment. With respect to past physical impairment, Pinok testified that he had had
difficulty conducting his normal activities while the wound on his forearm was still
open and that he had not been able to use his arm in any capacity because the skin on
his arm was very thin. With respect to future physical impairment, Pinok testified
that he continued to experience impairment in his arm because, when he applied
force, his forearm would itch and begin to hurt. Pinok also testified, however, that
he had “pretty much recovered” and that he was able to do all the things in his daily
life and work that he had done prior to his injury. 
           Pinok did not testify about limitations to his ability to engage in specific,
non-work-related activities. See Patlyek, 2004 WL 1573032, at *4. Neither did his
testimony reveal injuries that were distinct from, or that extended beyond, injuries
compensable as pain and suffering, loss of earning capacity, or other damage
elements. See id.; see also Golden Eagle Archery, 116 S.W.3d at 772. The jury not
only compensated Pinok for his past medical expenses, but awarded him $25,000 in
damages for his past and future physical pain and mental anguish and $27,000 in
damages for his past and future disfigurement. We hold that Pinok presented no
evidence showing an impairment separate and distinct from his pain and suffering,
disfigurement, and lost wages—injuries for which he was awarded damages. 
          We overrule Pinok’s sole issue.
Conclusion
          We affirm the judgment of the trial court. 
 


 Tim Taft
     Justice

Panel consists of Justices Taft, Jennings, and Bland.