COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-373-CV

 

 

WAFFLE HOUSE, INC.                                                          APPELLANT

 

                                                   V.

 

CATHIE WILLIAMS                                                                 APPELLEE

 

                                              ------------

 

            FROM
THE 67TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Waffle House, Inc. appeals
from a jury verdict finding that its employee sexually harassed Appellee Cathie
Williams, a former Waffle House employee, that Waffle House=s negligence in Asupervising
and/or retaining@ the
employee proximately caused damage to Williams, and that Waffle House
constructively discharged Williams by an official action.  In four issues, Waffle House argues that the
jury=s findings of negligent supervision and retention cannot support the
judgment; that Williams=s
alternative trial theories have been abandoned, or, alternatively, the evidence
is legally and factually insufficient to support the jury=s findings of sexual harassment and constructive discharge; that
Waffle House is entitled to a new trial because the trial court abused its
discretion by excluding evidence and because of newly discovered evidence; and
that there is no legally or factually sufficient evidence to support the jury=s findings that Waffle House acted maliciously or with reckless
indifference toward Williams.  We affirm.

Facts
and Procedural History

Williams began working at
Waffle House Unit 206 on July 5, 2001. 
She worked the third shift, from 9 p.m. to 7 a.m.  During Williams=s employment with Waffle House, she had a number of different
managers.  Ossie Ajene was the store
manager at the time of her hiring, and T.J. Marshall was the district
manager.  In December 2001, Kevin Love
replaced Ajene as the store manager. 
Allen Conley replaced Marshall as the district manager in January
2002.  Kevin Ross was the division
manager (manager over the district managers) at that time.  Managers did not usually work the third shift
but were available by telephone at all hours and regularly came in during the
night to handle problems.








Within Williams=s first week of work, employee Eddie Davis, a cook, began making
sexual comments to her.  Davis looked her
up and down and then told her that she Alooked like [his] baby=s mama@ and that
she Ahad a fine ass for a white woman.@  When Williams walked by Davis,
he would push her into counters and into the grill.  Davis asked Williams if she Aever had the flavor of a black man.@  Williams testified that when
Davis made the remark, he had his hands down his pants.  At one point, while Williams waited on
customers, Davis came up behind her, held her arms, held his whole body against
hers close enough to breathe on her neck, and said, AIsn=t she
great?  Isn=t she wonderful?,@ to the customers.  Davis
cornered her on several other occasions as well.  When Williams would reach up to put plates on
a shelf above head level, Davis would put his arm up and rub against her
breast.  On one occasion, Williams went
to the back room, where the lights were off, to get salad supplies.  As she began to leave, Davis stood in front
of her with his arm up on the freezer door, blocking her exit.  When she requested that he move, he just
chuckled.  She had to duck under his arm
to leave the room.  On another occasion,
when Davis was at the restaurant after his shift, he showed Williams a condom
and laughed.  He would frequently stare
at her when he was in the restaurant while off duty.








There were no complaints from
other employees about sexual remarks or behavior by Davis.  No other employee witnessed the incidents
with Williams.

Williams told store manager
Ajene of Davis=s
behavior.  Williams testified that when
she told Ajene about Davis=s conduct, he laughed and told her that Ait doesn=t sound like
Eddie.@  Waffle House claimed that
Ajene first heard of the complaint from coworker Bobbie Griffith, who had heard
about it from Williams but had not witnessed the behavior.  Ajene spoke to Davis, who denied the
allegations.  Ajene testified at trial
that when he spoke to Davis, he was not sure specifically what Williams=s complaint against Davis consisted of because Williams would not talk
about it with him.  Ajene nevertheless
moved Davis to the second shift.  Ajene
testified that he then kept his eyes open for any problems between Davis and
Williams during the shift change.  During
the nearly eight months after Davis moved shifts, Williams and Davis rarely
worked together, with shift overlaps totaling approximately 18.5 hours during
that time.  But Davis was still at the
restaurant many times when not on the clock, eating meals and picking up his
pay.  Davis=s replacement on the third shift was his roommate, with whom Davis
shared a car, and Davis often spent time at the restaurant after his shift.








Williams also discussed the
issue with district manager Marshall. 
Marshall spoke with Davis about Williams=s allegations, and again Davis denied them.  Waffle House provides an employee complaint
hotline as part of its sexual harassment policy.  The hotline allows employees to report
complaints to corporate management without going through lower-level
managers.  Marshall attempted to call the
hotline for Williams, who said that she had tried to use the hotline before but
worried she had not dialed correctly. 
The parties dispute whether Marshall accidentally called the wrong
number and left a message on the company=s workers=
compensation hotline, or whether the complaint was made to the correct number
but not acted upon by corporate management.

Williams reported the
harassment to Love after he replaced Ajene. 
Love told Davis that he would not tolerate sexual harassment, and he
told Griffith to report back to him if she saw any incident between Williams
and Davis.  District manager Conley, who
had replaced Marshall, told Williams to write him a letter documenting her
claims, which she did.  Conley reported
Williams=s claim to Ross, the divisional manager.  Waffle House corporate management denies ever
receiving Williams=s letter,
and Conley could not remember exactly to whom he gave the letter.








Williams claimed that Waffle
House did nothing to determine if the behavior was ongoing or if Davis was
retaliating against her.  Williams=s last day of work was February 24, 2002; the next week, when Williams
was scheduled to work, her husband called and resigned for her.  Williams then filed complaints with the Equal
Employment Opportunity Commission and the Texas Commission on Human Rights (ATCHR@), seeking
permission to sue.  The EEOC and the TCHR
each issued a right to sue notice.

Williams filed suit in
Tarrant County alleging sexual harassment under the Texas Labor Code,[2]
as well as common law claims of assault and battery, ratification, and
negligent supervision and retention.  She
further alleged that Waffle House acted with reckless indifference with respect
to the statutory sexual harassment claim and willfully or maliciously with
respect to the common law claims.  She
also claimed exemplary damages.

Davis could not be found at
the time of trial, and he was nonsuited. 
At trial, Waffle House attempted to introduce a chart that summarized
the number of hours that Williams and Davis worked together during Williams=s time at Waffle House.  The
trial court excluded the chart.  The
trial court also granted Williams=s motion in limine prohibiting Griffith from testifying about any
sexual comments that Williams made in the workplace and excluded portions of
Griffith=s deposition testimony from evidence.








Williams testified that Davis=s harassment caused her to have shortness of breath and to feel afraid
and helpless.  She said that she could
not sleep and had trouble eating, and her hair started falling out.  She stated that she had to take medication to
help with her anxiety and depression.








Williams=s husband testified that after she started working at Waffle House,
she became sleepless and restless, began having nightmares, and began grinding
her teeth.  Williams=s attorneys referred her to Dr. C. Ewing Cooley, a psychologist and
therapist, who began treating Williams and who testified about her mental
condition.  He testified that Williams
had recurring anxiety and was experiencing fear and anger.  Dr. Cooley testified that Williams=s experiences with Davis exacerbated the posttraumatic stress disorder
she suffered from as a result of her stepfather sexually abusing her as a
child.  Waffle House argued that Williams=s emotional and physical symptoms resulted from a series of events
that she experienced in a short period of time: 
her stepfather had recently been released from prison and had previously
threatened to kill Williams and her stepsister for testifying against him;
Williams=s son had ongoing heart problems that had required multiple surgeries,
and he had been having problems at school; because of her son=s difficulties, Williams had been home-schooling him while working at
Waffle House and she and her husband were engaged in another lawsuit, in which
they were suing for emotional distress, due to problems with their mobile home.

In a 10-2 verdict, the jury
found Waffle House liable on some of Williams=s claims.  The jury found that
Davis had sexually harassed Williams, that Davis had assaulted Williams, and
that Waffle House=s negligence
in supervising Davis, retaining him, or both proximately caused damage to
Williams.  The jury also found that
Waffle House constructively discharged Williams by an official action.  The jury did not find that Waffle House
ratified Davis=s assault or
that Waffle House retaliated against Williams for making her sexual harassment
complaint.  The jury awarded her $400,000
in past compensatory damages, $25,000 in future compensatory damages, and
$3,460,000 in punitive damages.  The
trial court entered a final judgment for Williams for $400,000 in past
compensatory damages, $53,201.09 in prejudgment interest, $25,000 in future
compensatory damages, $425,000 in punitive damages (lowered due to the general
cap on punitive damages), $4,728.60 in costs, and postjudgment interest at five
percent.

After trial, a former Waffle
House employee, Lisa Stone, called the Waffle House legal department after
reading a newspaper article about the verdict and disclosed conversations she
had had with Williams at work in which Williams allegedly openly discussed her
sexual preferences and sexual conduct.








Waffle House filed a motion
for a new trial and, alternatively, a suggestion of remittur of damages, and a
motion for judgment notwithstanding the verdict, and after these motions were
denied, a notice of appeal.

Analysis

Negligent Supervision and Retention Claim








The first issue on appeal is
whether the jury=s findings
of negligent supervision and retention can support the judgment.  Waffle House first argues that there is no
legally or factually sufficient evidence to support the jury=s finding of negligent supervision and retention.  Alternatively, Waffle House argues that the
trial court erred by failing to instruct the jury on Adamages.@ A legal sufficiency challenge may only be
sustained when:  (1) the record discloses
a complete absence of evidence of a vital fact; (2) the court is barred by
rules of law or of evidence from giving weight to the only evidence offered to
prove a vital fact; (3) the evidence offered to prove a vital fact is no more
than a mere scintilla; or (4) the evidence establishes conclusively the
opposite of a vital fact.[3]  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable factfinder could, and
disregard evidence contrary to the finding unless a reasonable factfinder could
not.[4]

An assertion that the
evidence is factually insufficient to support a fact finding means that the
evidence supporting the finding is so weak or the evidence to the contrary is
so overwhelming that the answer should be set aside and a new trial ordered.[5]  We are required to consider all of the
evidence in the case in making this determination, not just the evidence that
supports the finding.[6]








A claim of negligent
supervision or negligent retention is based on the employer=s direct negligence, not the employer=s vicarious liability.[7]  An employer is therefore not liable for an
employee=s conduct under a negligent supervision or a negligent retention
theory unless the employer owed a duty to the injured party,[8]
the employer=s negligence
proximately caused the injury,[9]
and the employee committed an actionable tort.[10]  Waffle House does not dispute that its
employer-employee relationship with Davis created a duty on its part to control
Davis=s conduct or that it had a duty to adequately hire, train, and
supervise its employees.[11]  Nor does Waffle House dispute that the
negligent performance of those duties imposes liability on Waffle House if
Williams=s injuries resulted from Waffle House=s failure to take reasonable precautions to protect her from Davis=s misconduct.[12]  Waffle House does contend that Williams
failed to produce legally or factually sufficient evidence of a breach of duty
or of causation.








We first consider whether the
evidence presented at trial was legally and factually sufficient to support a
finding of breach of duty.  Williams
testified that within her first week of work, Davis began making unwanted
sexual comments to her.  Ajene learned of
Williams=s problems with Davis and spoke to Davis, who denied the allegations.
Ajene moved Davis to the second shift but did not call the company hotline and
did not take any steps to ensure that Davis did not interact with Williams in
the restaurant when Davis was not working. 
Ajene testified that he then kept his eyes open for any problems between
Davis and Williams during the shift change, but Ajene did not conduct an
investigation of Williams=s
complaints, other than his initial conversation with Davis.  Williams testified that Ajene told her he
wanted to handle the situation in-house and did not want her to call the
hotline.

District manager Marshall
spoke with Davis about Williams=s allegations, and again Davis denied them.  Marshall attempted to call the hotline for
Williams.  He did not conduct an
investigation of Williams=s
complaints, did not follow up with Williams to determine if any investigation
had been made by Waffle House=s corporate management, and did not ensure that Davis and Williams
would have no interaction in the restaurant.








When Love replaced Ajene,
Williams made her complaints to him. 
Love told Davis that he would not tolerate sexual harassment.  He did not investigate the complaints and did
not investigate as to whether problems were continuing.  He also did not attempt to ensure that Davis
did not interact with Williams in the unit. 
In fact, when Williams complained to him that she was still encountering
Davis at work, he told her that there was no way to structure their shifts so
as to avoid her coming into contact with Davis as long as they were both
employed at the same restaurant.  He did
not call the hotline as required under Waffle House policy.  He did report to Marshall, his district
manager.  Marshall told Love that he (Marshall)
would look into the matter, but Love never followed up to determine if Marshall
had investigated the matter or what he was doing to take care of the
situation.  When Conley replaced Marshall
as Love=s district manager, Love did not talk to him about the situation.

Conley also did not attempt
to ensure that Williams and Davis had no interaction in the restaurant.  In his deposition, he stated that he believed
that he had called the hotline, but at trial he stated that he did not remember
calling the hotline.  He did not
interview Davis or ask him for a statement. 
In his testimony, Conley could not be sure what he did with the letter
he asked Williams to write or whom he gave it to.








Although a call was made to a
Waffle House hotline, no investigation was ever made of Williams=s complaints.  Even if Williams
called the wrong number, she had reported her complaint to four different
managersConce in writingCand the
evidence shows that none of the managers conducted a sufficient investigation[13]
of her complaints, ascertained whether Waffle House corporate management was
investigating the complaints, followed up with Williams as to whether the
complaints were being investigated or whether the problems were ongoing, or
ensured that Williams and Davis would have no interaction on the work
premises.  No attempt was made by the
managers to supervise Davis when he was in the store off-duty to prevent the
type of behavior that Williams reported. 
Waffle House retained Davis as an employee despite Williams=s complaints and without sufficiently investigating to determine
whether her complaints had merit.








Under Texas law, an employer
may be liable to a plaintiff for negligent supervision if the plaintiff=s injuries result from the failure of the employer to take reasonable
precautions to protect the plaintiff from the misconduct of its employees.[14]  Waffle House urges us to apply Mackey v.
U.P. Enterprises, Inc. and cites that case for the proposition that
because Waffle House had corporate policies regarding sexual harassment, it
took reasonable precautions to prevent Williams from the misconduct of its
employees, and therefore as a matter of law there is no evidence of breach of
duty.  Waffle House thus claims that an employer
cannot be held liable if it puts in place a policy to prevent the kind of harm
Williams suffered but then fails to follow the policy.  We do not read Mackey for the
proposition that an employer=s duty to its employees ends with putting in place reasonable
precautions to prevent harm, such that an employer can escape liability when it
learns that an employee is engaging in the kind of behavior the precautions
were designed to prevent, yet the employer fails to act.  Such an interpretation would fly in the face
of the law on negligent retention, under which an employer is liable if it
retains an incompetent employee whom the employer knows was incompetent or
unfit, Athereby creating an unreasonable risk of harm to others,@[15] and the plaintiff=s  injuries are the result of
the employer=s continued
employment of the incompetent or unfit employee.[16]








We also find Mackey to
be distinguishable from this case.  In Mackey,
the plaintiff employee sued her employer, U.P. Enterprises, owner of the Taco
Bell franchise where she worked, on grounds that her managers sexually harassed
her.  Mackey alleged that UPE failed to
monitor the supervisory practices of the managers who sexually harassed her, Afailed to detect or take action to deter the alleged sexual
harassment,@ and Afailed to implement and monitor procedures for handling grievances.@[17]  UPE moved for summary judgment
and presented evidence that it had a written policy against sexual harassment,
that it trained its managers on the policy twice a month, and that corporate
supervisors visited each store daily.[18]  The trial court granted summary judgment, and
Mackey appealed.[19]  The court of appeals held that in order to
avoid summary judgment, Mackey would have had to present evidence specifying
UPE acts or omissions that supported her allegations or that otherwise
controverted UPE=s summary
judgment evidence.[20]  Because Mackey presented no such evidence,
the summary judgment was affirmed.








In the instant case, Williams
alleged that (1) Waffle House managers negligently supervised and negligently
retained an employee that Waffle House had reason to know was violating its
company policies and (2) Waffle House did not follow its own policies regarding
sexual harassment and the investigation of sexual harassment complaints.  Specifically, Williams=s petition alleged that it was foreseeable that she would be harmed if
Waffle House retained Davis and if Waffle House failed to properly supervise
Davis.  She alleged that Waffle House
knew or should have known that Davis was incompetent or unfit for retention,
that he would continue to come into contact with Williams during her working
hours and, based upon Williams=s complaints, that this would create a risk of harm to her.  She further alleged that Waffle House would
have made such a determination had it performed an investigation in keeping
with its own corporate policies. 
Williams then presented evidence supporting these claims at trial.  Mackey is therefore distinguishable
from this case.













The evidence presented at
trial showed that Waffle House did not conduct a sufficient investigation given
the gravity of Williams=s
complaints, did not follow its own procedures for investigating such
complaints, did not take reasonable precautions to prevent interaction between
Williams and Davis in the restaurant,[21]
and retained an employee it had reason to know was unfit, all of which was some
evidence of breach of duty by Waffle House.[22]  We therefore hold that the evidence was
legally sufficient on this element. 
Additionally, we hold that the evidence was factually sufficient because
we cannot say that the evidence supporting a finding of breach of duty was so
weak or the evidence to the contrary so overwhelming that the jury=s answer should be set aside.   Waffle
House also argues that the evidence was insufficient to support a finding of
proximate cause.  We disagree.  Proximate cause consists of both cause in
fact and foreseeability.[23]  Cause in fact is an act or omission that is a
substantial factor in bringing about the injury, without which the injury would
not have occurred.[24]  The element of foreseeability is met if Aa person of average intelligence should have anticipated@ that the act or omission would create a danger to others.[25]  Proximate cause is a question of fact Aparticularly within the province of a jury@; Aa jury
finding on proximate cause will be set aside only in the most exceptional
circumstances.@[26]








According to Williams=s testimony at trial, because of her experiences at Waffle House, she
began having nightmares about Waffle House management.  She has trouble sleeping at night because she
Ahears things,@ and she has
to get up to check on her children out of fear that something is going to
happen to them.  She began grinding her
teeth at night, causing them to chip, and she now must wear an occlusal guard
at night.  Her hair started falling out,
and she testified that she had never experienced hair loss before her
experience at Waffle House.  She testified
that because of Davis=s conduct, she
cannot be alone in a dark room and becomes panicked in crowds and
elevators.  She began taking medication
to cope with her anxiety and depression. 
She has been in therapy for several years now to deal with her anxiety
resulting from her experience at Waffle House.








Waffle House contends that
the presence of other stressors in Williams=s life is fatal to her claim because Williams presented no testimony
as to what percentage of her stress was caused by any acts of Waffle
House.  Waffle House attempts to
characterize Dr. Cooley=s testimony
as an admission that Williams=s damages were caused by other stressors rather than by any acts or
omissions of Waffle House.  Dr. Cooley
did state that he could not specify what exact percentage of her stress was
caused by her stepfather=s sexual
abuse and what exact percentage was caused by her treatment at Waffle
House.  But Dr. Cooley further testified
that he was not aware that anyone could specifically parcel out into
percentages the cause of mental anxiety and the accompanying physical
injuries.  He also further testified that
he understood that she had been coping with her childhood experiences until her
experiences at Waffle House. 
Accordingly, we do not regard Dr. Cooley=s testimony as an admission that Waffle House=s negligence did not cause injury to Williams.  Further, the jury apparently did not find
credible Waffle House=s arguments
that Williams=s injuries
resulted from other stressors in her life. 
The jury did believe Williams=s evidence that she was capably dealing with other stressors in her
life and that it was her experience at Waffle House that triggered her negative
reactions.       Texas law is well settled
that a tortfeasor takes a plaintiff as he finds her.[27]  Williams was therefore entitled to recover
the damages resulting to her from Waffle House=s breach, Aconditioned
as [she] was at the time of the injury, and not such damages as [she] might
have been entitled to had [her] condition been different.@[28]  Even if other stressors in
Williams=s life made her more susceptible to injury from Waffle House=s negligence, that fact Acannot affect the question of right to or measure of damages.@[29]

We note that Waffle House
appears to be asking us to hold that a plaintiff must present expert testimony
proving sole proximate cause when alleging damages from negligence.  Such a rule is clearly not the law in Texas.  Rather, Texas law allows that there may be
more than one proximate cause of an injury, and Aall persons whose acts contributed to the injury are liable therefor,
and the negligence of one does not excuse the negligence of the other.@[30]  We therefore are unpersuaded
by Waffle House=s arguments.








Waffle House cites Castillo
v. Gared, Inc.,[31]
for the proposition that an act that may furnish a condition that makes an
injury possible does not constitute proof of causation.  Castillo does not control our
holding.  In Castillo, a security
company provided security services for a motel.[32]  The company=s policy permitted the security guard to enter a guest=s room to investigate a disturbance without being accompanied by
another person, which the court held furnished a condition that made rape
possible but did not make it foreseeable.[33]  The company did not know and had no reason to
anticipate that the security guard in question would rape a guest.[34]  In this case, Waffle House did more than
assign two employees to the same shift, furnishing a condition that made
possible the assault of one employee by the other.  After Waffle House was notified multiple
times of problems between the two employees, it failed to sufficiently
investigate or take adequate steps to prevent the kind of harm it knew or
should have known could result from the continued interaction of the two employees.  This is at least some evidence, more than a
scintilla, of negligent supervision and retention.








We believe that the evidence
presented to the jury was legally sufficient to support the jury=s answer as to causation; there was ample evidence that at least some
of the damage to Williams was caused by Waffle House=s negligence and that her existing problems were exacerbated by her
experiences at the restaurant.  Further,
we hold that the evidence was factually sufficient because we cannot say that
the evidence that Williams suffered damages from the negligence of Waffle House
was so weak or the evidence to the contrary so overwhelming that the jury=s answer on damages should be set aside and a new trial ordered.  Accordingly, because the evidence is legally
and factually sufficient and we find no exceptional circumstances in this case,
we uphold the jury=s finding on
proximate cause.[35]

Alternatively, Waffle House
argues that the trial court erred by failing to instruct the jury that Adamages@ in
negligence cannot arise from conduct that amounts to statutory sexual
harassment.  Williams counters that
Waffle House failed to preserve this argument for appeal.  We agree.








To preserve a complaint for
our review, a party must have presented to the trial court a timely request,
objection, or motion that states the specific grounds for the desired ruling,
if they are not apparent from the context of the request, objection, or motion.[36]  If a party fails to do this, error is not
preserved, and the complaint is waived.[37]  When complaining of an error in the jury
charge, the objecting party must timely and plainly make the trial court aware
of the complaint and obtain a ruling.[38]

During the charge conference,
Waffle House did object that Adamage@ needed to
be defined, but in an ambiguous manner. 
Waffle House did not plainly make the trial court aware of Waffle House=s complaint on appeal that the jury needed to be instructed that it
could not base damages for negligent supervision and retention on a finding of
sexual harassment by Davis.  When
discussing the compensatory damages jury question, the parties argued as
follows:

[COUNSEL
FOR WAFFLE HOUSE]:  But it needs to be
defined.

 

THE
COURT:  What, damage?

 

[COUNSEL
FOR WAFFLE HOUSE]:  I believe it does
under the Pattern Jury Charge there=s a
definition as to damage, what damage means.

 








THE
COURT:  Yeah.  Damages are defined as a host of things, loss
of consortium, loss of earning capacity, loss of household servicesB that=sBthey=re
economic damages.

 

[COUNSEL
FOR WILLIAMS]:  Well, I think the damages
are defined in Question No. 9, your Honor.

 

THE
COURT:  Yeah.

[COUNSEL
FOR WILLIAMS]:  The damages that she=s
entitled to.  If the jury found that she
was damaged by Waffle House=s negligent supervision, they
would then turn to Question No. 9 and determine the amounts of her damages for
those categories listed that are available.

 

THE
COURT:  And you=re
saying the damages are defined as back pay, compensatoryB

 

[COUNSEL
FOR WAFFLE HOUSE]:  Compensatory damages.

 

THE
COURT:  Bdamages
past, compensatory future.  How do I know
that the jury knows that, to refer to a definition of damages, seeBbut
see, I have a problem doing that because I mean you=re
telling the jury these are the damages that she suffered.  I=m not going to define
damages.  I=m
going to leave it alone.  Okay.  

 

Anything else as to that question?

 

[COUNSEL
FOR WILLIAMS]:  Not as to that question,
Your Honor.

 

THE
COURT:  All right.

 

The discussion in the conference clearly
indicated that the trial court understood Waffle House=s objection to be that Waffle House wanted a definition on damages,
generally.













Waffle House contends that it
preserved error on the trial court=s failure to include a definition on damages because it submitted in
writing separate damages questions for the sexual harassment and tort
claims.  But there is a difference
between objecting on the ground that jury questions were not asked separately
and objecting that instructions were not given.[39]  Waffle House needed only to object to the
absence of an instruction in such a way that the trial court understood its
objection, but it did not do so.[40]  Further, when Williams=s counsel stated that the jury would answer the compensatory damages
question if the jury found that Williams was damaged by Waffle House=s negligent supervision, Waffle House did not then notify the trial
court of its contention that the jury should not answer the compensatory
damages question so as to allow a finding of sexual harassment to be the basis
of damages from Waffle House=s negligent supervision and retention of Davis.  Later in the charge conference, Waffle House
specifically objected that the question did not contain a mitigation
instruction as in the charge that Waffle House had submitted, but it made no
such complaint with respect to a damages instruction.  Neither the objections made nor Waffle House=s proposed jury questions informed the trial court of Waffle House=s argument that damages needed to be defined in a way that would make
the jury understand that it could not base damages for negligent supervision
and retention on a finding of sexual harassment by Davis.  We therefore hold that the complaint is
waived.

Because we hold that the
evidence is legally and factually sufficient to support the jury=s findings on breach of duty and proximate cause and that Waffle House
did not preserve its complaint on the damages instruction, we overrule Waffle
House=s first issue.  We therefore do
not address Waffle House=s second
issue of whether Williams=s
alternative trial theories can support the judgment.[41]

Whether Waffle House is Entitled to a New
Trial








We now consider Waffle House=s third issue, whether it is entitled to a new trial.  Waffle House maintains that it is entitled to
a new trial because the trial court abused its discretion by excluding the
testimony of Bobbie Griffith, a Waffle House employee, and by excluding an
exhibit, specifically a chart summarizing the number of hours Williams and
Davis worked together during Williams=s employment at Waffle House. 
Waffle House also maintains it is entitled to a new trial based on the
newly discovered evidence from Lisa Stone, Williams=s former coworker.








Whether to grant a new trial
based on newly discovered evidence is within the discretion of the trial court.[42]  To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles; in other words, whether the act was arbitrary
or unreasonable.[43]  Merely because a trial court may decide a
matter within its discretion in a different manner than an appellate court would
in a similar circumstance does not demonstrate that an abuse of discretion has
occurred.[44]  An abuse of discretion does not occur as long
as some evidence of substantive and probative character exists to support the
trial court=s decision.[45]

A trial court=s rulings in admitting or excluding evidence are also reviewable under
an abuse of discretion standard.[46]  An appellate court must uphold the trial
court=s evidentiary ruling if there is any legitimate basis in the record
for the ruling.[47]

We first decide whether the
trial court=s exclusion
of Griffith=s testimony
entitles Waffle House to a new trial. 
Waffle House argues that the trial court abused its discretion by
excluding Griffith=s testimony,
which it contends  demonstrates that
Williams regularly injected sexual discussions into the work environment.  According to Waffle House, the evidence goes
to the A>welcomeness= of sexual
chats or conduct in the workplace@ and the specific question of whether Davis=s conduct was unwelcome to Williams. 
Williams argues that Waffle House did not preserve this issue for appeal
and that Griffith=s testimony
was properly excluded.








If a proponent offers
evidence that the trial court excludes, to preserve error the proponent must
present a formal bill of exception to the trial court unless the substance of
the excluded evidence was apparent from the context within which the questions
were asked.[48]  A party cannot rely on a ruling on a motion
in limine to preserve error.[49]  There is, however, a distinction between a
motion in limine and a pretrial ruling on admissibility.[50]  A trial court may conduct a pretrial hearing
to consider written trial objections to a party=s exhibits and Asuch other
matters as may aid in the disposition of the action.@[51]  At the hearing, the court can
issue an order that controls Athe subsequent course of the action, unless modified at the trial to
prevent manifest injustice.@[52]  The rule Adoes not suggest that it is necessary to go through the same procedure
during the course of the trial.@[53]








Waffle House had designated
portions of Griffith=s video
deposition that it intended to show at trial. 
The trial court=s scheduling
order had required Williams to submit her objections to Waffle House=s video designations pretrial, and Williams accordingly filed her
objections on April 7, 2005.  Williams
also filed a motion in limine seeking to keep out the conversations that
Williams had with Griffith about Williams=s sexual conduct.  After
Williams submitted her objections, the court requested that a copy of the
deposition be attached to her

objections. 
On the first day of trial, the trial court informed the parties of its
ruling that the video deposition testimony at question was inadmissible:

THE
COURT:  I still have to rule on the
videotape deposition, and I=ve ruled on that, but I=ve
got to change and so . . . my coordinator is going to come in and get a copy of
the objections and I=ll
just affix my rulings.

 

To be truthful, yesterday I ruled that
technicallyCI don=t
mind saying thatCtechnically
Ms. Griffith could talk about all that, but after sitting here reading this
case law, there is a distinction, and I caught that.  I=m smart enough.  I think I caught that distinction where I nowCI
believe she can=t, I=ve
got to scribble through all my markings. 
Okay?  All right.

 

At the end of that day, the court gave the
parties a copy of his ruling on the video deposition designations.  In the order, the court granted each of
Williams=s objections to Griffith=s testimonyCthe same
testimony that she sought to keep out through the motion in limine.













Williams contends that
because an adverse ruling on a motion in limine preserves nothing for review,
Waffle House=s failure to
offer Griffith=s testimony
during trial prevents it from arguing error in its exclusion.  The trial court did grant Williams=s motion in limine.  But the
trial court also separately ruled on Williams=s pretrial objections to the admissibility of the deposition testimony
at issue.  Prior to trial, Waffle House
designated which portions of Griffith=s deposition it intended to offer at trial.  In accordance with the trial court=s scheduling order, Williams submitted written objections to specific
portions of the deposition.  In a pretrial
conference, the court requested and received a copy of the deposition at issue,
and Waffle House requested and was granted the opportunity to respond.  We do not believe that Waffle House was
required to offer the objected-to testimony during the trial by again offering
the video deposition.  Nor was Waffle
House required to offer the testimony by questioning Griffith on the subject
while she was on the stand, because Waffle House could not have circumvented the
court=s ruling by offering in live testimony what could not be offered by
the deposition.[54]  Additionally, no further offer of proof was
necessary because the trial court was given a copy of and looked at the
deposition testimony at issue and heard Waffle House=s basis for admitting the testimony prior to its ruling, and
consequently this evidence was already in the record.  The deposition transcript was further made a
part of the appellate record by its inclusion as an exhibit in Waffle House=s motion for a new trial. 
Accordingly, we hold that Waffle House has preserved this complaint.

We must therefore consider
whether the trial court abused its discretion by excluding the testimony.  The comments allegedly made by Williams in
this case were never made to Davis, and Davis was not at trial to testify as to
whether he overheard any of the comments or what effect they had on his belief
as to the welcomeness of his behavior to Williams.  The trial court excluded the testimony on the
basis that it would only be relevant in a suit against Davis, and because, in
this case, admitting the testimony would serve no purpose except to prejudice
the jury.  After reviewing case law on
the issue, the trial court further stated that it believed that under the
controlling authority, in this particular case, Griffith could not testify on
the matter.








Evidence must be relevant to
be admissible,[55]
and evidence that is relevant may nonetheless be excluded when the probative
value of the evidence is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury.[56]  Evidence of a plaintiffs Asexually provocative speech or dress@ are not per se inadmissable, but a trial court Amust carefully weigh the applicable considerations in deciding whether
to admit evidence of this kind.@[57]  The trial court=s belief that the testimony had no relevance other than to unfairly
prejudice the jury was not, in this case, arbitrary or unreasonable,
considering the lack of evidence as to whether Davis even knew of or heard the
comments Williams made to Griffith, that no evidence suggested that Williams
made such comments to Davis or established that she made such comments in a
manner such that she knew he would hear her, and no evidence suggested that any
of the other Waffle House employees testifying at trial knew anything about or
had ever heard these conversations.[58]  We therefore hold that the trial court did
not abuse its discretion in excluding the testimony.








We next determine whether the
trial court abused its discretion by excluding Waffle House=s graph summarizing the amount of time that Williams and Davis worked
together.  The trial court sustained
Williams=s objection to the graph=s admittance because Waffle House=s sponsoring witness did not create the graph herself, did not know
who did, and was not sure whether it was created before or after trial began.

The Texas Rules of Evidence
generally require evidence to be authenticated or identified as a condition
precedent to its admissibility.[59]  A trial court does not abuse its discretion
by excluding evidence that has not been authenticated.[60]  Because Waffle House=s sponsoring witness could not authenticate the graph and the graph
was not otherwise authenticated, we hold that the trial court did not abuse its
discretion in excluding the graph.[61]








We next consider whether
Waffle House is entitled to a new trial based on the newly discovered evidence
from Lisa Stone.  A party seeking a new
trial on the ground of newly discovered evidence must show the following: (1)
the evidence has come to light after trial; (2) it was not owing to want of due
diligence that the evidence did not come to light sooner; (3) the new evidence
is not cumulative; and (4) the evidence is so material that it would likely
produce a different result if a new trial were granted.[62]  The newly discovered evidence should Abring to light a new and independent truth@ that is Aso decisive
as to show that justice has not been obtained.@[63]

Stone is a former Waffle
House employee.  During her employment at
Waffle House, she worked with Williams. 
In Waffle House=s attorney=s affidavit in support of the motion for a new trial, he states that
in the records of and interviews with people identified as persons with
knowledge of relevant facts, Stone=s name was never mentioned as a person who would have knowledge of
relevant facts.  He states that her name
does not show up in time records for unit 206 until week 43 of 2001.  He also states that Waffle House was unaware
of Stone=s new address in Mineola, Texas, where she moved after her employment
with Waffle House ended.








In Stone=s affidavit in support of the motion for a new trial, she stated that
she never saw Davis have inappropriate conversations or contact with Williams
or any other employee, that Williams was habitually late to work, and that
Williams had regular conversations with her about Williams=s sexual conduct.  She also
states that she contacted Waffle House after reading about the jury verdict in
a newspaper.

Waffle House claims that
Stone=s evidence is not cumulative. 
But Stone=s affidavit
simply recites more instances of Williams=s allegedly discussing her sexual conduct with a coworker.  Like Griffith=s deposition testimony, nowhere in Stone=s affidavit does she say that Williams discussed anything of a sexual
nature with Davis or in any way indicated to Davis that his comments to her or
his touching her were welcome.  In its
reconsideration of the motion for a new trial, the trial court stated, AI believe that to allow that Bobbie Griffith information in was
nothing but an attempt to prejudice the jury and I still believe that.@  Thus, if Waffle House had been
aware of Stone=s evidence
prior to trial, the trial court most likely would have excluded it, just as it
excluded Griffith=s
testimony.  Because the trial court did
not abuse its discretion in excluding Griffith=s testimony, it likewise would not have been an abuse of discretion
for the trial court to exclude Stone=s testimony on the same grounds.








Although Stone=s affidavit corroborates Griffith=s deposition testimony that Williams discussed her sexual conduct with
others, we cannot say that Stone=s testimony is so material that it would probably cause a different
result or that it brings to light a new and independent truth because it does
not shed light on whether Davis knew of these discussions or whether the
discussions affected his behavior toward Williams or her reaction to his
behavior.  Accordingly, we hold that the
trial court did not abuse its discretion in not granting a new trial based on
Stone=s testimony.

Because the trial court did
not abuse its discretion by excluding portions of Griffith=s deposition testimony or Waffle House=s graph summary or by not granting a new trial based on Stone=s evidence, we overrule Waffle House=s third issue.

Whether Waffle House is Entitled to
Reversal of the Punitive Damages Award








In its final issue, Waffle
House argues that the award of punitive damages must be reversed because there
is no legally or factually sufficient evidence to support the jury=s findings that Waffle House acted maliciously or with reckless
indifference toward Williams.  Punitive
damages awards must be supported by clear and convincing evidence.[64]  Clear and convincing evidence is that measure
or degree of proof that will produce in the mind of the trier of fact a firm
belief or conviction as to the truth of the allegations sought to be
established.[65]  This intermediate standard falls between the
preponderance standard of civil proceedings and the reasonable doubt standard
of criminal proceedings.[66]  While the proof must weigh heavier than
merely the greater weight of the credible evidence, there is no requirement
that the evidence be unequivocal or undisputed.[67]








This higher burden of proof
elevates the appellate standard of legal sufficiency review.[68]  In reviewing the evidence for legal
sufficiency, we must determine whether the evidence is such that a factfinder
could reasonably form a firm belief or conviction that its finding was true.[69]  We must review all the evidence in the light
most favorable to the finding.[70]  This means that we must assume that the
factfinder resolved any disputed facts in favor of its finding if a reasonable
factfinder could have done so.[71]  We must also disregard all evidence that a
reasonable factfinder could have disbelieved.[72]  We must consider, however, undisputed
evidence even if it is contrary to the finding.[73]  That is, we must consider evidence favorable
to the finding if a reasonable factfinder could, and disregard evidence
contrary to the finding unless a reasonable factfinder could not.[74]














This higher burden of proof
also elevates the appellate standard of factual sufficiency review.[75]  On appeal, we cannot view a finding that must
be based on clear and convincing evidence the same as one that may be sustained
on a mere preponderance.[76]  In considering whether the evidence rises to
the level of being clear and convincing, we must determine whether, on the
entire record, a factfinder could reasonably form a firm conviction or belief
that its finding was true.[77]  We must consider whether disputed evidence is
such that a reasonable factfinder could not have resolved it in favor of the
finding.[78]  If, in light of the entire record, the
disputed evidence that a reasonable factfinder could not have credited in favor
of the finding is so significant that a factfinder could not reasonably have
formed a firm belief or conviction in the truth of its finding, then the
evidence is factually insufficient.[79]  Whether reversing or affirming an award of
punitive damages, our opinion must state the reasons for reversing or upholding
the jury=s finding and must detail the evidence or lack of evidence relating to
the liability for punitive damages, in light of the requirements of chapter 41
of the Texas Civil Practice and Remedies Code.[80]      Under the statute in effect at the time
Williams filed her lawsuit, to be awarded punitive damages, a claimant had to
prove by clear and convincing evidence that the harm suffered by the claimant
resulted from malice.[81]  Malice as defined by the applicable statute
and under the jury charge submitted is either (1) a specific intent to cause
substantial injury to the claimant, or (2) an act or omission that Awhen viewed objectively from the standpoint of the actor at the time
of its occurrence involves an extreme degree of risk, considering the
probability and magnitude of the potential harm to others,@ and Aof which the
actor has actual, subjective awareness of the risk involved, but nevertheless
proceeds with conscious indifference to the rights, safety, or welfare of
others.@[82]  The second definition
incorporates the elements of the Texas Supreme Court=s gross negligence standard.[83]

A corporation can only act
through an agent or agents.[84]  Consequently, Waffle House is liable for punitive
damages only if (1) an agent of Waffle House acted with malice and Waffle House
ratified the act, (2) Waffle House maliciously hired an unfit agent, or (3)
Waffle House acted with malice through a vice principal.[85]








Waffle House does not dispute
that the unit managers and district managers are vice principals.  But Waffle House argues that, given that the
jury failed to find ratification of Davis=s conduct or retaliation by Waffle House, there is no legally or
factually sufficient evidence that Waffle House=s vice principals acted with the specific intent to cause harm to
Williams or with an awareness of an extreme degree of risk.  We agree that there is no evidence that vice
principals acted with specific intent to harm Williams, but we disagree that
there is no evidence that such vice principals actedBor failed to actBwith an
awareness of an extreme degree of risk. 
We conclude that the jury could have reasonably found by clear and convincing
evidence that the Waffle House managers had actual, subjective awareness of the
risk involved and that their conduct amounted to conscious indifference toward
Williams=s rights, safety, or welfare.








Given the complaints made to
them, the evidence shows that the managers had actual awareness of the risk
posed by Davis=s conduct.[86]  Waffle House trained its managers on its
sexual harassment policy and on the type of conduct that constitutes sexual
harassment.  The Waffle House managers
were therefore aware of Waffle House=s policy regarding sexual harassment and of their duty to administer
and follow the policy, which they breached.[87]  Given their training, and given that Williams
made several complaints on multiple occasions of repeated violations of company
policy, the managers Anecessarily
had to have actual, subjective awareness of the risk involved in conduct
prohibited by such policy and the attendant necessity to conduct an
investigation commensurate with the seriousness of@ the allegations of sexual harassment.[88]

The Waffle House managers,
however, failed to follow company policy, failed to conduct their own
investigations, failed to determine if any investigation was made, and failed
to ensure that Williams did not come into contact with Davis during her working
hours, as detailed above.  Given the
managers= conduct and the seriousness of Williams=s allegations to them, we believe that the evidence is legally and
factually sufficient to support the jury=s award of punitive damages. 
That is, the evidence presented is such that the jury could have
reasonably formed a firm belief or conviction that the failure to act by Waffle
House managers created an extreme degree of risk to Williams and showed a
conscious indifference to Williams=s rights, safety, or welfare.[89]  Accordingly, we overrule Waffle House=s final issue.

Conclusion








Having disposed of all of
Waffle House=s issues, we
affirm the trial court=s judgment.

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL B:   DAUPHINOT, GARDNER,
and MCCOY, JJ.

DELIVERED: 
February 1, 2007











[1]See Tex. R. App. P. 47.4.





[2]Tex. Lab. Code Ann. ''
21.051, 21.055 (Vernon 2006).





[3]Uniroyal
Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex.
1998), cert. denied, 526 U.S. 1040 (1999); Robert W. Calvert, ANo
Evidence@ and
AInsufficient
Evidence@
Points of Error, 38 TEX. L.
REV. 361, 362-63 (1960).





[4]City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).





[5]Garza
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965).





[6]Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex.), cert.
denied, 525 U.S. 1017 (1998).





[7]Morris
v. JTM Materials, Inc., 78 S.W.3d 28, 49 (Tex. App.CFort
Worth 2002, no pet.); Estate of Arrington v. Fields, 578 S.W.2d 173, 178
(Tex. Civ. App.CTyler
1979, writ ref=d
n.r.e.).





[8]NationsBank,
N.A. v. Dilling, 922 S.W.2d 950, 953-54 (Tex. 1996).





[9]Dieter
v. Baker Serv. Tools, 739 S.W.2d 405, 408 (Tex. App.CCorpus
Christi 1987, writ denied).





[10]Gonzales
v. Willis, 995 S.W.2d 729, 739 (Tex. App.CSan
Antonio 1999, no pet.).





[11]See
Mackey v. U.P. Enters., Inc., 935 S.W.2d 446, 459 (Tex.
App.CTyler
1996, no writ); Garcia v. Allen, 28 S.W.3d 587, 592 (Tex. App.CCorpus
Christi 2000, pet. denied); Castillo v. Gared, Inc., 1 S.W.3d 781
(Tex. App.CHouston
[1st Dist.] 1999, pet. denied).





[12]See
Garcia, 28 S.W.3d at 592.





[13]See Wal-Mart
Stores, Inc. v. Itz, 21 S.W.3d 456, 474 (Tex. App.CAustin
2000, pet. denied) (holding that the jury could reasonably infer from the
evidence that a manager=s
investigation was pretextual, or at least insufficient, given the gravity of
the plaintiff=s
allegations, where the manager=s investigation consisted of
talking to the plaintiff, the object of her complaints, and two other
employees, after which manager did not believe he had enough facts but did not
conduct any further investigation).





[14]Mackey, 935
S.W.2d at 459; see also Dieter, 739 S.W.2d at 408.





[15]Leake
v. Half Price Books, Records, Magazines, Inc., 918
S.W.2d 559, 563 (Tex. App.CDallas 1996, no writ); Estate
of Arrington, 578 S.W.2d at 178.





[16]Leake, 918
S.W.2d at 563; Estate of Arrington, 578 S.W.2d at 178; Dieter,
739 S.W.2d at 408.





[17]Mackey, 935
S.W.2d at 459.





[18]Id. at
459-60.





[19]Id. at
460.





[20]Id.





[21]See Loram
Maint. of Way, Inc. v. Ianni, 2006 WL 1791692, *2 (Tex. 2006)
(stating that the employer‑employee relationship can give rise to a legal
duty on the part of the employer to control the conduct of its employee and as
such an employer may be liable for off-duty torts of its employees that are
committed on the employer=s
premises); see also Otis Eng=g
Corp. v. Clark, 668 S.W.2d 307, 309 (Tex. 1983).





[22]Compare Kendall
v. Whataburger, Inc., 759 S.W.2d 751, 757 (Tex. App.CHouston
[1st Dist.] 1988, no pet.) (holding evidence was sufficient to support jury=s
finding that the employer was not negligent where the employee Ahad
never given [the employer] any indication of one day becoming a problem
employee@).





[23]Clark
v. Waggoner, 452 S.W.2d 437, 439 (Tex. 1970); Lawrence v.
City of Wichita Falls, 122 S.W.3d 322, 329 (Tex. App.CFort
Worth 2003, pet. denied).





[24]Morris, 78
S.W.3d at 50.





[25]Waggoner, 452
S.W.2d at 439; Lawrence, 122 S.W.3d at 329.





[26]Tex.
Dep=t of
Transp. v. Olson, 980 S.W.2d 890, 893 (Tex. App.CFort
Worth 1998, no pet.) (quoting Potter v. Anthony Crane Rental of Tex.,
Inc., 896 S.W.2d 845, 850 (Tex. App.CBeaumont 1995, writ denied)).





[27]Coates
v. Whittington, 758 S.W.2d 749, 752-53 (Tex. 1988); Driess
v. Friederick, 73 Tex. 460, 462, 11 S.W. 493, 494 (1889).





[28]See
Driess, 11 S.W. at 494.





[29]See
id.





[30]Strakos
v. Gehring, 360 S.W.2d 787, 794 (Tex. 1962); see also
Olson, 980 S.W.2d at 893.





[31]1
S.W.3d 781 (Tex. App.CHouston
[1st Dist.] 1999, pet. denied).





[32]Id. at
783.





[33]Id. at
786.





[34]Id. at
787.





[35]See Olson,
980 S.W.2d at 893.





[36]Tex. R. App. P. 33.1(a); see also Tex. R. Evid. 103(a)(1).





[37]Bushell
v. Dean, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh=g).





[38]State
Dep=t of
Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 241
(Tex.1992) (op. on reh=g).





[39]See Diamond
Offshore Mgmt. Co. v. Guidry, 171 S.W.3d 840, 844 (Tex. 2005) (noting that
the Appellant Adoes
not complain that questions about course of employment were not asked
separately; it complains that no such questions were asked at all.@).





[40]See id.
(AWhile
the trial court could certainly have inquired about the separate issues of
negligence, causation, and course of employment in a single question with
proper instructions, [Appellant] was not obligated to request such a
question.  It was required only to object
to the absence of any inquiry, which the trial court acknowledged
[Appellant] had done with its requested questions.@  Emphasis added).





[41]See Tex. R. App. P. 47.1.





[42]Jackson
v. Van Winkle, 660 S.W.2d 807, 809 (Tex. 1983), overruled
in part on other grounds by Moritz v. Preiss, 121 S.W.3d 715 (Tex.
2003); Marvelli v. Alston, 100 S.W.3d 460, 483 (Tex. App.CFort
Worth 2003, pet. denied).





[43]Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42
(Tex. 1985), cert. denied, 476 U.S. 1159 (1986).





[44]Id.





[45]Butnaru
v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex. 2002).





[46]Nat=l
Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex.
2000). 





[47]Owens-Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998).





[48]Tex. R. App. P. 33.2; Tex. R. Evid. 103(a)(2).





[49]Huckaby
v. A.G. Perry & Son, Inc., 20 S.W.3d 194, 204 (Tex.
App.CTexarkana
2000, pet. denied).





[50]Id. at
204; see also Owens‑Corning Fiberglass Corp. v. Malone, 916 S.W.2d
551, 557 (Tex. App.CHouston
[1st Dist.] 1996), aff'd, 972 S.W.2d 35 (Tex. 1998).





[51]Tex. R. Civ. P. 166(m), (p); see also
Huckaby, 20 S.W.3d at 205.





[52]Tex. R. Civ. P. 166.





[53]Huckaby, 20
S.W.2d at 205.





[54]See Huckaby,
20 S.W.3d at 204.





[55]Tex. R. Evid. 402.





[56]Tex. R. Evid. 403.





[57] Meritor
Sav. Bank, FSB v. Vinson, 477 U.S. 57, 69, 106 S.Ct. 2399, 2406B07
(1986).





[58]See Howard
v. Historic Tours of Am., 177 F.R.D. 48, 51 (D.D.C. 1997) (applying Meritor
but stating that Athat
the plaintiffs may have engaged in sexual behavior with their co‑workers
other than the harassing employees might be construed as welcoming the
harassing conduct complained of only if the harassing employees knew of it@).





[59]Tex. R. Evid. 901(a).





[60]ESIS,
Inc., Servicing Contractor v. Johnson, 908 S.W.2d 554, 561 (Tex. App.CFort
Worth 1995, writ denied) (holding that the trial court abused its discretion in
admitting an unauthenticated copy of a commission appeals panel opinion).





[61]See Tex. R. Evid. 901; see also ESIS,
Inc., 908 S.W.2d at 561.





[62]Marvelli, 100
S.W.3d at 483.





[63]In re
Marriage of Yarbrough, 719 S.W.2d 412, 415 (Tex. App.CAmarillo
1986, no writ); see also New Amsterdam Cas. Co. v. Jordan,  359 S.W.2d 864, 867B68
(Tex. 1962) (holding that trial court did not abuse its discretion by denying a
new trial when new evidence did not Abring to light a new and
independent truth@).





[64]Tex. Civ. Prac. & Rem. Code Ann. '
41.003 (Vernon Supp. 2006).





[65]Id. ' 41.001(2); Tex. Fam. Code Ann. '
101.007 (Vernon 2002); Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 31
(Tex. 1994).





[66]In re
G.M., 596 S.W.2d 846, 847 (Tex. 1980); State v. Addington, 588
S.W.2d 569, 570 (Tex. 1979).





[67]Addington, 588
S.W.2d at 570.





[68]Diamond
Shamrock Ref. Co. v. Hall, 168 S.W.3d 164, 170 (Tex. 2005); Sw.
Bell Tel. Co. v. Garza, 164 S.W.3d 607, 622, 625 (Tex. 2004).





[69]Hall, 168
S.W.3d at 170; Garza, 164 S.W.3d at 627.





[70]Hall, 168
S.W.3d at 170; Garza, 164 S.W.3d at 627.





[71]Hall, 168
S.W.3d at 170; Garza, 164 S.W.3d at 627.





[72]Hall, 168
S.W.3d at 170; Garza, 164 S.W.3d at 627.





[73]Wilson, 168
S.W.3d at 817; Hall, 168 S.W.3d at 170.





[74]Wilson, 168
S.W.3d at 827.





[75]In re
C.H., 89 S.W.3d 17, 25 (Tex. 2002).





[76]Id.





[77]Id. at
28.





[78]In re
J.F.C., 96 S.W.3d 256, 266 (Tex. 2002).





[79]Id.





[80]Tex. Civ. Prac. & Rem. Code Ann. '
41.013(a) (Vernon 1997).





[81]Act
of Apr. 12, 1995, 74th Leg., R.S., ch. 19, ' 1, 1995 Tex. Gen.  Laws 110 (amended 2003) (current version at Tex. Civ. Prac. & Rem. Code Ann. '
41.003(a)).





[82]See Tex. Civ. Prac. & Rem. Code Ann. '
41.001(7) (Vernon 1997).





[83]Dillard
Dep=t
Stores, Inc. v. Silva, 148 S.W.3d 370, 373 (Tex. 2004); see also
Moriel, 879 S.W.2d at 23.





[84]Mobil
Oil Corp. v. Ellender, 968 S.W.2d 917, 921 (Tex.1998).





[85]See
Qwest Int=l
Commc=ns,
Inc. v. AT & T Corp., 167 S.W.3d 324, 326 (Tex. 2005).





[86]See
Itz, 21 S.W.3d at 478.





[87]See
id. at 478.





[88]Id.





[89]See Tex. Civ. Prac. & Rem. Code Ann. '
41.001(7).