COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-062-CV

 

 

CHRISTOPHER O=DELL AND                                                          APPELLANTS

ARLINGTON
STEAKHOUSE, INC.

 

                                                             V.

 

REBECCA WRIGHT                                                                             APPELLEE

 

                                                       ------------

 

              FROM
THE 352ND DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                                      OPINION

 

                                                       ------------

I. Introduction








Appellee
Rebecca Wright (AWright@)
sued Appellants Christopher O=Dell
and Arlington Steakhouse, Inc. (AO=Dell@)
for sexual harassment, assault and battery, and constructive discharge.  A jury found in favor of Wright, awarding a
total of $425,000 in past mental anguish damages based on its findings of
sexual harassment and assault.  In four
issues, O=Dell
argues that the trial court erred by not allowing O=Dell
to call a witness; that the trial court erred by allowing Wright to testify
about being abducted and sexually assaulted when she was five years old; that
the trial court erred by not applying a statutory cap to the sexual harassment
damages; and that the evidence is legally and factually insufficient to support
both the jury=s
mental anguish finding and the amount of damages awarded.  We will affirm.

II.  Background

Wright
worked as a waitress at Arlington Steakhouse, a restaurant in Arlington, Texas,
from July 2004 to October 2004.  By all
accounts, after O=Dell had verbally
reprimanded Wright for serving a dessert not available on the menu to a
long-time customer of the restaurant, Wright quit and walked out.  Shortly thereafter, Wright filed a complaint
against O=Dell
with the Texas Workforce CommissionCalleging
sexual harassment.  After receiving a
right-to-sue notice, Wright filed this present lawsuit.








According
to Wright=s
testimony at trial, O=DellCWright=s
supervisor and a stockholder in Arlington SteakhouseCmade
numerous lewd and sexually suggestive comments to her, touched her multiple
times in a sexually offensive way, and created a sexually harassing environment
for her and other female waitstaff at the restaurant.  Wright said that on one occasion, as she was
taking a break, O=Dell stuck his finger down
the back of her pants.  On another
occasion, O=Dell
took his finger and Astuck it down [the front of
her] shirt.@  Wright said that both times she told O=Dell
not to do such things, but he Asmirked
and walked off.@  Wright alleged that O=Dell
had also once stuck his tongue in her ear as she was entering orders in the
restaurant=s
computer.  Wright said that O=Dell
also brushed his body up next to hers, so much so that she could feel his Aprivate
part@
pressed against her body.  Wright
testified that these events made her feel A[v]ery
gross, very dirty,@ and Avery
angry.@  Wright said that each time O=Dell
would do these types of things, she told him to stop.

Wright
also testified to a number of comments O=Dell
made to her during her employment at the restaurant.  Wright said that at the end of her shift, she
would report to O=Dell so that he could make
sure her stations were in order.  Wright
said that O=Dell
would frequently look her Aup
and down@ and
make sexually-connoting comments like, A[L]ooks
good to me.@  She said that he would also make comments
about how her bottom looked good in her pants, how she smelled good, or that
her breasts looked good in certain shirts. 
Wright said that O=Dell also made even more
advancing comments.  She said that O=Dell
once propositioned her to go upstairs and perform oral sex for $20.  On another occasion, O=Dell
allegedly spoke about how his fingers were Adouble
jointed@ and
asked Wright to Aimagine what I can do.@  Wright said that O=Dell=s
comments were clearly sexual in nature. 
He allegedly also propositioned Wright to have a Athreesome@
with O=Dell
and his wife and once invited Wright over for a nude swim in his pool.  Wright said that O=Dell=s
alleged conduct was typical of him and that he had done these types of things
to other waitresses.  Wright=s
attorney introduced a portion of a petition by one of Wright=s
co-workers who had also filed a similar suit against O=Dell.








Wright
testified that O=Dell would also degrade her
by calling her a AF-ing whore, F-ing bitch,
stupid waitress, [and] stupid whore.@  Wright said that all of these comments and
conduct by O=Dell
made her feel Avery
low . . . just violated.@  Wright said that she did not quit when these
events occurred because she needed the job, was intimidated by O=Dell
because he was her superior, and wondered if others would believe her account
of these events.  She also said that she
felt Ahelpless@ to
leave and that somehow maybe she Adeserved@
what she was being exposed to.

During
direct examination, Wright=s
attorney asked her if she had ever in the past felt similar feelings that
others would not believe her.  As Wright
began to answer, the following colloquy took place:

[Wright=s attorney]:  Have you ever felt like that before?

 

[Wright]:  Yeah.

 

[Wright=s attorney]:  Would you tell the jury about it?

 

[Wright]:  When I was 5 years old I was outside my
mother=s - -

 

[O=Dell=s attorney]:  Objection, Your Honor.  Relevance 
on this case.

 

[Trial
Judge]:  Approach the bench, please.

(Bench
conference without court reporter.)

 

[Wright=s attorney]:  I=m sorry about the interruption.  Would you just tell us what happened,
briefly?

 

[Wright]:  When I was 5 years old, I was riding my
bicycle out in front of my mother=s apartment. 
I was supposed to have a babysitter watching me.

 








[Wright=s attorney]: 
Slow down.  You=re talking very
fast.  I don=t want you to have to
do it twice.

 

[Wright]: 
When I was 5 years old, I was riding my bike in front of my mother=s apartment.  My babysitter was supposed to be watching me,
and she wasn=t.  A guy in a truck pulled up and asked me if I
had ever seen a dog.  I stopped my bike
and answered him.  And at that time he
grabbed me and threw me in his truck and made me lay down, and drove me to some
apartments about an hour away.  And there
was this field across from the apartment (Crying), and made me perform oral sex
on him.  And then he pulled my shirt over
my head and he left.  And I had to walk
across the apartments and find somebody to help me.

 

[Wright=s attorney]: 
And that was when you were five?

 

[Wright]: 
Yes.

 

[Wright=s attorney]: 
Was that your first bad experience with a male?

 

[Wright]: 
Yes.

O=Dell=s
attorney made no further objections to this testimony, other than the one
preceding the bench conference; and later, during cross-examination, he
exchanged in the following colloquy with Wright about the same matter:

[O=Dell=s attorney]:  Sure. 
And ‑‑ now, you came up with ‑‑ I understand
three days ago you told your attorneys about being abducted when you were five
years old?

 

[Wright]:  Yes.

 

[O=Dell=s attorney]:  And certainly if that occurred, I think
everybody in this room would be sympathetic to you.  But obviously when something pops up just before
the day of trial that=s that important, I
have to question it.  Is there any reason
why you didn=t bring it to your
attorneys= attention earlier?

 








[Wright]:  It=s just something that I needed to talk about.

 

[O=Dell=s attorney]:  Were there any witnesses to that event?  Are there any witnesses to . . .
you being abducted?

 

[Wright]:  No.

 

[O=Dell=s attorney]:  Any police reports you have?

 

[Wright]:  No.

 

[O=Dell=s attorney]:  Were the police even called?

 

[Wright]:  Yes. 
There may be a police report.

 

[O=Dell=s attorney]:  Do you have it?

 

[Wright]:  No.

 

[O=Dell=s attorney]:  Have you ever actually seen it?

 

[Wright]:  No.

 

Wright also testified extensively as to how O=Dell=s
alleged actions affected her.  In
addition to saying that O=Dell=s
actions made her feel Adegraded . . .
violated . . . low@ and
distrustful of working for others, she said that she had trouble forgetting
what had occurred.  She said that after
the events, she has since interviewed for jobs and wonders whether her
potential new bosses will treat her the same.

Wright said that she has nightmares regarding the
events.  Not only does she dream about
the actual events, but she also has dreams where she is running from O=Dell.  She testified that she once had a dream where
she dreamed Afor
six hours@
that she was trying to save O=Dell
from drowning.








According
to Wright, she has Aa tendency to clinch [her]
jaw@ due
to the anxiety that these events caused her. 
She said that she often holds her breath when she talks about O=Dell
or anything that Adeal[s] with him.@  She experiences episodes of being nauseated
and feels the need to vomit.  Her body
stiffens, her heart races, and she suffers from the Ashakes.@  Oftentimes, because of what she suffered, she
feels almost paralyzed and her blood pressure rises.  She said that she cannot control when she
thinks about O=Dell
and that she cannot control when these side effects occur.

Wright
also explained how the trial was very stressful to her and that when she had to
see O=Dell
in the courtroom it made her feel dirty, angry, powerless, disgusted, and
scared.  Wright said that she started
experiencing side effects the day after she quit, that they continued even up
to and through trial, and that she did not have these side effects prior to her
employment at the restaurant.  Wright
admitted that there were other stressful things in her life, including the
death of her husband (whom she was separated from at the time) in a motorcycle
accident a few months after she quit the restaurant.  She also admitted that she had never received
medical attention nor prescription drugs to help deal with the symptoms she
testified to.








Wright
also called O=Dell
to testify.  O=Dell
testified that he possessed a general understanding regarding the laws
pertaining to sexual harassment but that he did not have a specific policy in
place at the restaurant.  He said that in
the event that anyone had a specific complaint, they were to report to him, his
wife, or the assistant manager.  O=Dell
generally denied Wright=s accusations.  He testified that it would have been
impossible for him to stick his finger down Wright=s
blouse because of the aprons that he required the waitstaff wear at the
restaurant.  He also said that it would
have been very difficult to stick his finger in the back of Wright=s
pants when she was taking a break, without being seen, due to where she would
have been seated during breaks.  O=Dell
admitted that he would lose his patience and that he would use pejorative terms
sometimes, and he at first denied ever calling Wright the names that she
alleged he had called her but later agreed he had called her a Abitch.@  He also admitted that another waitress had
brought a similar suit, alleging complaints similar to those alleged by Wright,
and that he had settled that suit as Aa
business decision.@  In this suit, O=Dell
brought his own counterclaim for defamation against Wright.

The
jury returned a verdict in favor of Wright. 
Specifically, the jury found that O=Dell
assaulted Wright, that Wright had been constructively discharged from her
employment, and that Wright was subjected to harassment based on sex.  The jury found that Wright had not defamed O=Dell.  The jury awarded past mental anguish damages
on both the assault and sexual harassment claims.  The jury did not award any future mental
anguish damages.  The trial court entered
judgment on the jury=s verdict.  This appeal followed.

III.  Discussion








A.      The trial court=s
denying Martinez=s testimony

In
his first issue, O=Dell argues that the trial
court erred by not allowing him to call a witnessCAmanda
MartinezCto
testify.  Wright counters that O=Dell
failed to identify Martinez as a witness with knowledge of material facts on
his responses to Wright=s discovery requests and
admitted that this failure was due to inadvertence; thus, the trial court did
not abuse its discretion by not allowing Martinez to testify.  We agree with Wright.








A
party who fails to make, amend, or supplement a discovery response in a timely
manner may not introduce in evidence the material or information that was not
timely disclosed, unless the court finds that (1) there was good cause for
the failure to timely disclose or (2) the failure will not unfairly
surprise or prejudice the other parties. 
Tex. R. Civ. P. 193.6(a).  The
purposes of this rule are to promote responsible assessment of settlement and
prevent trial by ambush.  Tex. Mun.
League Intergov=tal Risk Pool v. Burns,
209 S.W.3d 806, 817 (Tex. App.CFort
Worth 2006, no pet.); see also Alvarado v. Farah Mfg. Co., 830 S.W.2d
911, 913B14
(Tex. 1992) (op. on reh=g) (applying predecessor
rule 215(5)).  The party seeking to offer
the evidence at issue has the burden to establish good cause or lack of unfair
surprise or prejudice.  Tex. R. Civ. P.
193.6(b).  The trial court has discretion
to determine whether the offering party has met its burden; however, a finding
of good cause or the lack of unfair surprise or unfair prejudice must be
supported by the record.  Burns,
209 S.W.3d at 817.  Inadvertence alone
will not constitute good cause for the failure to timely make, amend, or
supplement a discovery response.  See
Alvarado, 830 S.W.2d at 915 (AIf
inadvertence of counsel, by itself, were good cause, the exception would
swallow up the rule, for there would be few cases in which counsel would admit
to making a deliberate decision not to comply with the discovery rules.@).

In
this case, according to O=Dell=s
offer of proof, O=Dell intended to ask
Martinez about three things: 
(1) that O=Dell would not have allowed
Wright to wear the apron she contends she wore while working at the steakhouse;
(2) that, contrary to Wright=s
allegations, Martinez was never sexually harassed by O=Dell;
and (3) that Martinez overheard Wright say that she would lie to get more
money in this suit.

During
the offer-of-proof hearing, O=Dell
admitted that he knew for months about Martinez=s
expected testimony regarding which apron Wright would have worn and Martinez=s
expected denial that O=Dell made unwanted advances
toward her.  When questioned by the trial
judge, O=Dell
admitted that Martinez was his employee; that he had known about her for
months; and that, despite having procured an affidavit from Martinez, her affidavit
was never delivered to Wright.  According
to O=Dell,
his failure to update disclosure including Martinez as a witness was Aby
mere oversight.@








Furthermore,
O=Dell
admitted that he had intended to put on Martinez=s
alleged expected testimony regarding Wright=s having
said she would lie to prove his counterclaim for defamation against Wright and
that the information was indeed a surprise to both parties.  We conclude that the trial court did not
abuse its discretion by finding that O=Dell
failed to establish his burden that there was good cause for the failure to
timely disclose Martinez or prove that his failure to disclose her as a witness
would not have surprised or prejudiced Wright. 
See  Tex. R. Civ. P.
193.6(a).  We overrule O=Dell=s
first issue.

B.      Wright=s
testimony regarding her childhood abduction

In
his second issue, O=Dell argues that the trial
court erred by allowing Wright to testify about being abducted and sexually
assaulted when she was five years old.  O=Dell
argues that he objected to this testimony at trial and that the trial court
implicitly overruled his objection; thus, he is entitled to raise the issue on
appeal.  Wright argues that O=Dell
never obtained an explicit ruling on his relevance objection; thus, he has not
preserved this potential error for review. 
Furthermore, Wright argues that O=Dell
never raised a separate objection to the testimony at issue based upon the rule
providing for exclusion of relevant evidence if its probative value was
substantially outweighed by danger of unfair prejudice; thus, Wright argues, to
the extent that O=Dell now argues that this
testimony was prejudicial, he also failed to preserve that argument for our
review.  Tex. R. Evid. 403.








To
the extent O=Dell
is arguing on appeal that Wright=s
testimony was prejudicial, he has failed to preserve this complaint for our
review because he objected at trial only that this testimony was irrelevant and
not that its probative value was outweighed by its prejudicial value.  Id. 
Thus, O=Dell=s
argument that this testimony was introduced solely to Amanipulate
the jury with sympathy@  does not comport with his objection below and
is waived.  See Tex. Dep=t of
Transp. v. Olson, 980 S.W.2d 890, 897B98
(Tex. App.CFort
Worth 1998, no pet.) (holding appellant failed to preserve error as to
relevancy by objecting to an expert=s
qualifications).








To
the extent, however, that O=Dell
is arguing on appeal that the testimony in question is irrelevant, it is not
readily ascertainable that the trial court implicitly ruled on O=Dell=s
relevancy objection.  See Tex. R.
App. P. 33.1(a)(2)(A) (stating that in order to preserve an error for appeal,
the trial court must have ruled on a party=s
objection Aeither
expressly or implicitly@).  In this case, as Wright began to answer
questions about what had happened to her as a child, O=Dell
objectedCciting
relevance.  The trial judge immediately
called both parties= attorneys to the bench and
held a conference off the record. 
Afterwards, without giving a rulingCand
without any other objections being raisedCWright
continued to testify regarding this same subject.  This court cannot conclude that this is the
type of implicit ruling contemplated by rule 33.1, and we can find no authority
to suggest that an implied ruling can be found under the facts of this case.  Compare Blum v. Julian, 977 S.W.2d
819, 823B24
(Tex. App.CFort
Worth 1998, no pet.) (holding that trial court implicitly overruled plaintiff=s
objections to defendant=s summary judgment proof
when it granted defendant=s motion for summary
judgment), with Dolcefino v. Randolph, 19 S.W.3d 906, 926B27
(Tex. App.CHouston
[14th Dist.] 2000, pet. denied) (holding no implicit ruling could be
ascertained from the record). 
Furthermore, O=Dell never requested a running
objection regarding Wright=s
testimony and in fact later questioned Wright about the same evidence; thus,
the general rule that error in the admission of testimony is deemed harmless
and is waived if the objecting party subsequently permits the same or similar
evidence to be introduced without objection would apply, and O=Dell
has waived his objection to this testimony. 
See Volkswagen of Am., Inc. v. Ramirez, 159 S.W.3d 897, 907 (Tex.
2004) (citing Richardson v. Green, 677 S.W.2d 497, 501 (Tex. 1984)); City
of Houston v. Riggins, 568 S.W.2d 188, 190 (Tex. Civ. App.CTyler
1978, writ ref=d
n.r.e.).








Additionally,
even assuming this potential error was preserved, we conclude that the trial
court did not abuse its discretion by allowing Wright to testify to these
matters.  Evidentiary rulings are
committed to the trial court=s
sound discretion.  Bay Area Healthcare
Group, Ltd. v. McShane, 239 S.W.3d 231, 234 (Tex. 2007).  To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles; in other words, we must decide whether the act
was arbitrary or unreasonable.  Low v.
Henry, 221 S.W.3d 609, 614 (Tex. 2007); Cire v. Cummings, 134 S.W.3d
835, 838B39
(Tex. 2004).  Generally, evidence will be
deemed to be relevant if it tends to prove or disprove any fact in issue.  K‑Mart Corp. v. Honeycutt, 24
S.W.3d 357, 360B61 (Tex. 2000).  In this case, one of the issues debated
between the parties was why Wright did not leave the restaurant after the first
encounters that she found sexually harassing. 
Another issue was the extent of mental anguish that Wright had suffered
because of O=Dell=s alleged
offensive touching and sexual harassment. 
Wright testified that her fear of speaking out about what had occurred
and the degree to which these events impacted her were shaped by what had
happened to her when she was five years old. 
Given these issues, and focusing only on whether this testimony was
relevant, we cannot conclude that the trial court acted arbitrarily or
unreasonably by allowing Wright to testify over O=Dell=s
relevance objection.  We overrule O=Dell=s
second issue.








C.      Evidence supporting mental anguish damages

In
his third and part of his fourth issues, O=Dell
challenges the legal and factual sufficiency of the evidence supporting the
mental anguish awards.  The jury awarded
Wright $175,000 in mental anguish damages based on the jury=s
finding of assault and $250,000 in mental anguish damages based on the jury=s
finding of sexual harassment.  In these
issues, O=Dell
attacks both the sufficiency of the evidence supporting the mental anguish
finding and that the awards are unfair and unreasonable compensation.








An
award of mental anguish damages will survive a legal sufficiency challenge when
the plaintiff has introduced direct evidence of the nature, duration, and
severity of her mental anguish, thus establishing that there was a substantial
disruption in her daily routine.  Parkway
Co. V. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995).  We apply traditional no‑evidence
standards to determine whether the record reveals any evidence of A>a
high degree of mental pain and distress=
that is >more
than mere worry, anxiety, vexation, embarrassment, or anger= to
support any award of damages.@  Id. (quoting J.B. Custom Design
& Bldg. v. Clawson, 794 S.W.2d 38, 43 (Tex. App.CHouston
[1st Dist.] 1990, no writ)).  Direct
evidence may be in the form of the parties= own
testimony, that of third parties, or that of experts.  Parkway, 901 S.W.2d at 444.  The evidence also must justify the amount
awarded.  Saenz v. Fidelity &
Guar. Ins. Underwriters, 925 S.W.2d 607, 614 (Tex. 1996).  Although the impossibility of any exact
valuation requires that juries be given a measure of discretion in finding
damages, that discretion is limited.  Id.  A jury must find an amount that would fairly
and reasonably compensate for the loss; however, juries cannot simply Apick
a number and put it in the blank.@  Id.

Here,
Wright testified that on many occasions she had experienced anxiety, which
included clinching her jaw, holding her breath, and the sensation of feeling
stiff and unable to move:  AI
just stand still, like I=m stuck, I=m
rooted.  Like almost - - it=s
like almost paralyzing.@  She said that she also experienced feelings
of being nauseated and had episodes where her heart raced and her blood
pressure rose.  Wright testified that she
experienced Ashake[s].@  According to Wright, she had nightmares,
including dreams where she was running from O=Dell
or saving him from drowning.  Wright said
that these symptoms began Athe
next day@
after quitting when she discussed the events with her mother and that these
side effects continued throughout the nearly four-year period leading up to
trial.  Wright further testified that
retelling these events in preparation for trial made her feel Adirty,@ Aangry,@ Adisgusted,@ and
Apowerless.@  Wright said that when she recalls what
transpired, it is as though she is experiencing the events Aall
over again.@  We conclude and hold that Wright presented
legally and factually sufficient evidence of compensable mental anguish both to
the assault and to the sexual harassment claims.  But our inquiry does not end there because
Wright also must have presented evidence to justify the amount awarded.  Saenz, 925 S.W.2d at 614.








In Saenz,
our supreme court held that there must be evidence that the amount of damages
awarded by the jury for mental anguish was fair and reasonable but acknowledged
that such determination is often difficult:

There must be evidence that the amount found
is fair and reasonable compensation, just as there must be evidence to support
any other jury finding.  Reasonable
compensation is no easier to determine than reasonable behaviorCoften it may be
harderCbut the law requires
factfinders to determine both.  And the
law requires appellate courts to conduct a meaningful evidentiary review of
those determinations.  Id.

 

In Bentley
v. Bunton, our supreme court reviewed a mental anguish award of $7 million,
holding that it was excessive and without support in the evidence.  94 S.W.3d 561, 607 (Tex. 2002).  With regard to appellate review for
evidentiary support of noneconomic damages, the Court wrote:

Just as a jury=s prerogative of
assessing the credibility of evidence does not authorize it to find liability
when there is no supporting evidence or no liability in the face of
unimpeachable evidence, so a large amount of mental anguish damages cannot
survive appellate review if there is no evidence to support it, or a small
amount of damages when the evidence of larger damages is conclusive. The jury is
bound by the evidence in awarding damages, just as it is bound by the law.

 








Id. at
606.  Citing Saenz, the Bentley
court Arejected
the view that [the authority for appellate review of insufficient evidence]
displaces [an appellate court=s]
obligation . . . to determine whether there is any evidence at all of
the amount of damages determined by the jury.@  Id. 
Recognizing that reasonable compensation is not easy to determine, we
conclude that there is sufficient evidence in the record to support the amount
of the jury=s
awards for mental anguish and that the amounts awarded are fair and reasonable.[1]

The
jury heard testimony from Wright as to the disruption in her life and the
personal toll taken by the events surrounding the assault and sexual
harassment.  Moreover, the jury was asked
to consider an award for Wright=s
future mental anguish, but it awarded no damages to her on this issue.  See Schindler Elevator Corp. v. Anderson,
78 S.W.3d 392, 415 (Tex. App.CHouston
[14th Dist.] 2001, judgm=t vacated w.r.m.) (reasoning
that an award of some damages and not others indicates that jury Ameasured
carefully@
damages issue).  From this record, it is
certain that the jury did much more than Asimply
pick a number and put it in the blank.@  See Saenz, 925 S.W.2d at 614.  We conclude and hold that the jury=s
awards for the assault and for the sexual harassment were fair and
reasonable.  We overrule O=Dell=s
entire third and this portion of his fourth issues.

 

D.      Texas Labor Code Section 21.2585=s
statutory cap








In
the remainder of his fourth issue, O=Dell
argues that the trial court erred by entering judgment based on the jury=s
finding of an award in excess of Texas Labor Code Section 21.2585=s
statutory cap.  See Tex. Lab. Code
Ann. ' 21.2585(d)
(Vernon 2006).  The labor code sets the
maximum damages allowable, both compensatory and punitive, dependent on the
number of employees of the defendant.  See
id.  The damages awarded to Wright
totaled $250,000 on the sexual harassment claim.  An award of this amount would require the
defendant to employ at least 500 persons. 
See id.  O=Dell
argues that because his steakhouse employed fewer than 100 employees, the
mental anguish damages for Wright=s
sexual harassment claim should have been capped at $50,000.  Id.

In
this case, O=Dell
admits that he never pleaded the damages cap. 
As a general rule, where maximum damages are provided in statutes in
Texas, and a defendant wants to rely on the cap, it is considered a defense
that must be pleaded and proved.  Tex. R.
Civ. P. 94; Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 896B97,
904B905
(Tex. 2000); see, e.g., Tex. Civ. Prac. & Rem. Code Ann. ' 74.301
(Vernon 2005) (capping damages against health care providers); Tex. Civ. Prac.
& Rem. Code Ann. ' 41.008 (Vernon 2005)
(capping punitive damages).  We hold that
it was incumbent on O=Dell, if seeking to avail
himself of the protection of the damage cap, to both plead and prove the
defense.  See Shoreline, Inc. v. Hisel,
115 S.W.3d 21, 25 (Tex. App.CCorpus
Christi 2003, pet. denied) (holding that statutory cap found in Texas Labor
Code section 21.2585 is an affirmative defense that must be pleaded and
proved).  Because O=Dell
never pleaded the damages cap, we overrule the remainder of O=Dell=s
fourth issue.

IV.  Conclusion








Having
overruled all four of O=Dell=s
issues, we affirm the trial court=s
judgment.

 

 

 

 

BILL MEIER

JUSTICE

 

PANEL: 
LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

 

LIVINGSTON, C.J. concurs without opinion.

 

DELIVERED: 
August 5, 2010











[1]In Saenz, our
supreme court concluded that there was no evidence to support the jury=s $250,000 award for
mental anguish damages, considering that the only evidence found in the record
was one question and one answer, which indicated that Saenz worried and that
she believed she and her husband might lose their home and that they could not afford
the medical bills.  925 S.W.2d at 614.